## T. F. TORREY v. CITY OF SCRANTON.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 25, 1890—Decided March 10, 1890

1. A municipal corporation, diverting the flow of surface water so that it accumulates and flows upon abutting property where it would not flow naturally, is liable to the abutting owner in damages for the resulting injuries.

2. If no exceptions were taken before a referee, as to the findings of fact upon which his conclusions of law in favor of the plaintiff are based, the correctness of such findings cannot be questioned by the defendant on appeal to the Supreme Court.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and McCOLLUM, JJ.

133     173
20 SC ¹548

133     173
21 SC ¹ 20

133     173
25 SC ¹461

133     173
27 SC ¹582

133     173
f215     ²446

133     173
f 36 SC ² 48

133     173
d38SC ¹ 79

133     173
39SC¹606

No. 82 January Term 1890, Sup. Ct.; court below, No. 336 April Term 1887, C. P.

On February 28, 1887, Thomas F. Torrey brought trespass against the city of Scranton. Issue having been joined, the cause was referred to *Mr. W. A. Wilcox*, as referee, under the provisions of the act of 1869, and its supplements (perhaps, act of April 6, 1869, P. L. 725).

On June 18, 1888, the referee filed a report, which after the preliminary matter proceeded:

The plaintiff's claim is for injury to her real estate at the corner of Jefferson avenue and Pine street, in the Ninth ward of the city of Scranton, by surface water, in April, 1886. The amount claimed is four hundred dollars with interest. These injuries, it is claimed, were caused by the action of the defendant in directing the flow of surface water from other properties and from the streets to and upon said property of the plaintiff, for which plaintiff claims that defendant is liable in damages.

It was proved, and not denied, that the injuries were sustained as alleged. The amount was also proved as claimed and not disputed.

The defence relied on is that the municipality is not liable for these reasons: That the injury was caused by an extraordinary storm such as the municipality is not expected or required by law to provide against; that the city authorities exercised their legal discretion in the disposition of the surface water, to the best of their judgment and ability, and that, having done this, they are not responsible for the consequences; that, in causing or allowing the water to flow over plaintiff's property, they but permitted it to continue where it had always gone and in this incurred no liability.

The hillside, upon which this portion of the city of Scranton has been built, slopes towards the west to the Lackawanna river and towards the north to Pine Brook. At some date, earlier than the recollection of any of the witnesses who testified on this point, channels had been worn down this hillside by surface water. One of these channels, crossing what is now Monroe and Madison avenues between Olive and Pine streets, carried water over the property now owned by the plaintiff.

The Dunmore Road, constructed prior to 1840, and afterwards worked and used by the city as one of its highways, drained into this channel some water that had naturally gone to the north into Pine Brook. The streets and lots in the vicinity of the lots in question, were laid out in 1851 by the Lackawanna Iron & Coal Company. Some grading was done as early as 1860. In April, 1886, all the streets in the vicinity of plaintiff's property had been opened and graded.

The city of Scranton, including this territory, was incorporated by special act of assembly, approved April 23, 1866, P. L. 1034, and in 1877 came under the municipal act of 1874 as a city of the third class.

As the city has grown towards the north and east, the streets have been graded up and gutters and sewers constructed. Prior to the injuries complained of the city had graded Olive street. This grading of Olive street was well calculated to take from the property a large portion of the water which had previously flowed over it, but at the corner of Monroe avenue they had placed an obstruction in the gutter which turned the whole of the water coming down that side of that street into Monroe avenue, where it flowed to about the middle of the block and was there turned by another obstruction into a paved gutter, across the avenue, and from this gutter was discharged upon vacant lots over which it flowed to a culvert under Madison avenue, thence over a vacant lot and over plaintiff's property. About the time of plaintiff's purchase of the property, in 1885, this culvert under Madison avenue was closed up by the parties of whom he bought. In April, 1886, occurred a severe rain causing the water to come over Madison avenue, flooding plaintiff's property, and damaging it to the extent of four hundred dollars.

A number of requests for findings of fact were made which will here be considered.

The plaintiff's request for findings of fact are answered as follows:

1. Before the construction of the Dunmore Road, the natural flow of a large portion of the water, which at the time of the damage complained of was accumulated above plaintiff's property, was such as to carry it away from plaintiff's property towards Pine Brook.

Answer : The referee so finds.

2. Olive street was opened and graded several years before the damage complained of. A considerable portion of the water, which, if not obstructed would have flowed down Olive street was by the action of defendant diverted at the corner of Monroe avenue, in such manner that it accumulated above plaintiff's property and contributed to the injury complained of.

Answer : The referee so finds.

3. Monroe avenue was opened and graded from Olive to and beyond Gibson street, before the damage complained of. The grade of Monroe avenue was such that it would have naturally carried away from plaintiff's property a considerable portion of the water by which the damage was done. By action of the defendant, this water was directed down across Monroe avenue, by a paved gutter, in such manner that it accumulated above plaintiff's property and contributed to the injury complained of.

Answer : Monroe avenue was opened and partially graded from Olive street to and beyond Gibson street, before the damage complained of. The natural surface of the ground was not such as to allow the flow of water along Monroe avenue from Olive to Gibson street. A uniform descending grade of five feet in one hundred from Olive towards Gibson street had been determined on, and the grading had been actually done, so that the water would have flowed along the unpaved gutter on the northerly side of that avenue to Pine street, but for the fact that at a point about midway between Olive street and Pine street there had been placed an obstruction, which turned the water into a paved gutter placed diagonally across the avenue, in such manner as to assist the flow of water to the lots above plaintiff's property, and the water so conducted accumulated there and contributed to the injury complained of.

4. That the culvert placed by defendant across Pine street on the upper side of Madison avenue was inadequate to carry the water which accumulated at that point in showers of ordinary severity.

Answer : There is no testimony satisfactorily covering this request. The fact may perhaps be as stated, but it does not so appear from the evidence, and the referee cannot so find.

5. That plaintiff notified the street commissioner of defendant, several months before the injury complained of, that he was

liable to damage from the accumulation of water upon his property, and went over the premises with him and pointed out to him the defects in the drainage and suggested remedies.

Answer: The referee so finds.

*        *        *        *        *        *        *        *

Counsel for defendant asks the referee to find as matters of law as follows:

1. The defendant has a lawful right to grade and improve her streets, and in the exercise of this right she is not bound to divert from its course surface water that naturally flowed over plaintiff's lot.

2. That when plaintiff purchased his lot, he took it with notice of the existing improvements, and the city authorities were not bound to make any changes for his benefit.

3. Defendant is not liable for overflow of surface water caused by an extraordinary flood or fall of rain.

4. The construction of sewers or drains to carry off surface water is discretionary with the city authorities; and they cannot be compelled to perform it, and are not liable for damages caused by neglecting to do it."

Answer: The referee finds as requested in each of these requests.

The referee is of opinion that the plaintiff is entitled to recover from the defendant in this case.

The learned counsel for the city cited and relied on Dillon on Mun. Corp., § 799, and Carr v. Northern Liberties, 35 Pa. 327. The referee does not question the principles on which that case was decided, but this case is ruled by others not inconsistent therewith, and equally well established. In the case referred to, "the question," says LOWRIE, C. J., "is really reduced to this: Have the citizens of our incorporated towns a legal right to call upon the portion of the people thus incorporated, to devise and execute such a system of drainage as will secure all private property against all ordinary and extraordinary flooding by rain or melted snow?" That is not the question in this case. Here the plaintiff is complaining not of inadequate drainage, but of obstructions to regular drainage for the express purpose of casting the water upon her. The corporation was under no original obligation to the plaintiff, or to other property holders, to grade Olive street, or to gutter it,

or to turn into its gutters the drainage of a large area; but, having exercised the power so to do, it was bound so to care for the water as not to inflict injury on the property of the plaintiff. Instead of doing this, it placed obstructions in the gutters that were the proximate cause of the injuries complained of. The distinction between the case of Carr v. Northern Liberties and this case, is clearly shown by AGNEW, J., in Allentown v. Kramer, 73 Pa. 409.

A municipality is not liable for damages resulting from a lawful exercise of its discretionary power to plan and construct sewers and other improvements, but for the unlawful exercise of such power it may be held liable : Commonwealth v. Wood, 10 Pa. 96 ; Pittsburgh v. Grier, 22 Pa. 54 ; Allentown v. Kramer, supra ; Huddleston v. West Bellevue Bor., 111 Pa. 110. "The injury complained of in this case flows from a scheme put into execution by the municipal authorities by which the water is prevented from following the grade of the streets. The defendant arrested the water in its course down the declivities of the highways, as they were graded, and, by artificial means turned it out of its course and in a direction it would not otherwise have gone, and, having thus collected it from a large district of country, poured it in its accumulated volume and force on the complainant's land. If the defendant could do this without being answerable for the consequences, it would, in effect, have power to condemn private property to public use without compensation:" Field v. West Orange, 36 N. J. Eq. 120.

The referee finds no warrant in any reported case for the doctrine that a municipal corporation, in the exercise of its discretionary or judicial power of determining when, where, or how to make improvements, has the right to do so upon a plan which involves substantially the appropriation by it of the property of a citizen to the public use. The law in Pennsylvania does not give to corporate authorities, by reason of their control over streets and the power to grade and improve them, the legal right intentionally to divert water therefrom, as a means of protecting the streets, and discharging it by artificial means in increased quantities and with increased force and destructiveness upon the property, perhaps improved, of the adjoining owner : Dillon on Mun. Corp., § 799.

Opinion of the Court.

The referee finds that the plaintiff is entitled to recover from the defendant the sum of four hundred dollars with interest from the first day of May, 1886. The prothonotary is directed to enter judgment accordingly.

Exceptions filed by the defendant to the report of the referee were dismissed by the court, CONNOLLY, J., the report of the referee confirmed, and judgment entered in accordance with said report. Thereupon the defendant took this appeal, assigning the orders dismissing its exceptions, confirming the report of the referee, and entering judgment for the plaintiff, for error.

*Mr. W. Gaylord Thomas* and *Mr. I. H. Burns*, for the appellant.

Counsel cited: Carr v. Northern Liberties, 35 Pa. 328; Allentown v. Kramer, 73 Pa. 409; Fair v. Philadelphia, 88 Pa. 309; Scranton City's App., 121 Pa. 97.

*Mr. James H. Torrey*, for the appellee.

Counsel cited: Vanderslice v. Philadelphia, 103 Pa. 103; 2 Dillon on Mun. Corp., §§ 1042, 1048, 1051; Fair v. Philadelphia, 88 Pa. 309; Allentown v. Kramer, 73 Pa. 406; Elliott v. Oil City, 129 Pa. 570; Huddleston v. West Bellevue Bor., 111 Pa. 110; Angell on Water-courses, § 108; Bentz v. Armstrong, 8 W. & S. 40.

PER CURIAM:

The learned referee affirmed the defendant's points of law, and yet entered judgment against him. There is nothing to excite surprise in this, as the referee found the facts with the plaintiff. This left the defendant no facts to which his law can be applied. It is true he now complains of the findings of fact, but he took no exception to them before the referee, and it follows, logically and legally, that he has no standing here to object. The referee has found that a considerable portion of the water which, if not obstructed, would have flowed down Olive street, was by the action of the defendant diverted at the corner of Monroe Avenue, in such manner that it accumulated above plaintiff's property and contributed to the injury complained of. It is true there is no liability on the part

of a municipal corporation for the flooding of private property from the inadequacy of gutters, drains, culverts or sewers: Fair v. City of Philadelphia, 88 Pa. 309; Allentown v. Kramer, 73 Pa. 406; but I do not understand that it has ever been held that a municipal corporation may throw a body of water upon the property of one of its citizens which would not naturally have flowed there. It may not throw upon the land of A. the water which falls upon the land of B. This was precisely what was done in this case, if the referee is correct in his findings of fact; and that they are as he found them we are bound to presume.

Judgment affirmed.