## Aron, Appellant, v. Philadelphia.

Argued December 8, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*David F. Maxwell,* with him *George B. Clothier* and *Edmonds, Obermayer & Rebmann,* for appellant.—Defendant's negligence in failing to keep the sewer clear of obstructions was a concurring proximate cause of the injury: Duffy v. Power Co., 233 Pa. 107; Bailey v. Lavine, 302 Pa. 273; Scalet v. Telephone Co., 291 Pa. 451.

The city is liable for damage caused by the inadequacy of its sewer: Markle v. Boro., 142 Pa. 84; Butchers Ice, etc., Co. v. Phila., 156 Pa. 54; Krug v. St. Mary's Boro., 152 Pa. 30.

*James Francis Ryan,* with him *John J. K. Caskie,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for appellee.—There is no connection shown between the alleged negligent maintenance of the sewer and the damage caused to the plaintiff's property.

The city is not liable on any ground of the inadequacy of the sewer: Fair v. Phila., 88 Pa. 309; Carr v. Northern Liberties, 35 Pa. 324.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 3, 1933:

Plaintiff brought this action of trespass against the City of Philadelphia to recover damages for injuries to

his property, alleged to have been caused by water escaping from a sewer. The negligence averred on the part of the municipality was in constructing an inadequate sewage system, by failing to maintain it properly, by over-taxing its capacity by connecting branch sewers, and by failing to remedy these defects after notice. The case went to the jury on the question of proper maintenance and plaintiff received a verdict in the amount of $5,253.86. Subsequently judgment was entered for defendant non obstante veredicto on the ground that no causal relation was shown between the averred defective condition of the sewer and the injury to plaintiff's property. Plaintiff appealed.

The property of appellant damaged by the waters in question was located on the south side of Courtland Street between and extending to Twelfth and Mervine Streets. On the ground floor of the building at the corner of Twelfth and Courtland Streets, plaintiff conducted a dry goods store. On four occasions between September 8, 1929, and August 10, 1931, following unusual and exceptionally heavy rains, the streets in the vicinity of plaintiff's property were flooded and water entered his premises causing damage to the building and stock of goods contained in his storeroom.

Courtland Street runs east and west and where the flooding occurred there exists a four-way depression, the streets sloping down to this point from all directions. This area is drained by the Wingohocking Sewer System, the main conduit of which lies beneath Courtland Street in what was formerly the bed of Wingohocking Creek. East of plaintiff's property, the sewer continues to a point from which its contents are finally discharged into the Delaware River. To the west the sewer extends three blocks to Broad Street, where it curves under that thoroughfare and follows the ascent of Belfield Avenue beneath the surface, rising through Wister Woods Park to Church Lane and ultimately draining the upper reaches of the localities known as Logan and German-

town. Appellant asserts that an obstruction in the sewer between Church Lane and Penn Street, a point practically two miles distant from his premises, caused the flooding of the property here in question. To support his contention, he rests upon two theories, neither of which is tenable. The first is that the sand and stones subsequently found in the conduit in the vicinity of Church Lane clogged the sewer to such extent as to render it incapable of carrying off the surface water pouring into the entrances, with the result that the water which normally would have been cared for underground flowed down Belfield Avenue in torrents, attaining at times the proportions of a wave several feet high, which eventually reached the low spot where plaintiff's property was located and inundated the neighborhood to a depth of approximately seven feet. The patent impossibility of this argument lies in the fact that there were many openings to the sewer below the alleged obstruction capable of absorbing the water flowing down Belfield Avenue and several streets sloping away from that avenue would have diverted the stream long before reaching Courtland Street. Moreover, within Wister Woods Park, Belfield Avenue is raised above the surrounding terrain to such an extent that any unusual volume of water in the street would for the most part be dissipated in the adjacent soil.

In explanation of why the torrent flowing down Belfield Avenue was not taken up by the sewer entrances, appellant contends—and this is his second theory—that although the obstruction, not over three feet deep, near Church Lane did not block the water completely, the sewer being of a horseshoe type twelve feet high, nevertheless the momentum of the flow was retarded to such a degree the conduit was unable to carry off its maximum volume of water. This contention is refuted by appellant's own witness who testified that immediately below the point of obstruction the sewer was full and overflowing and that the water pressure was so great that

manhole covers were forced off and water spouted out of the openings five or six feet high. The absence of stones or other barriers in the sewer would only have increased the pressure and added to the volume of water forced from the conduit.

We are convinced that the sole cause of plaintiff's loss in this case was the excessive rainfall, which was shown to be of unusual severity on each of the four dates in question, and beyond the limit for which the sewer was designed. The real complaint of plaintiff is that the city failed to provide sewers of sufficient capacity to carry off, at all times and under all circumstances, water accumulating on Belfield Avenue which, because of the unusual topography of the vicinity, eventually flowed upon plaintiff's property. "This is not an obligation, however, which the city assumes or is bound to discharge:" Schweriner v. Phila., 35 Pa. Superior Ct. 128. There was evidence that the municipality had planned a future relief sewer for the drainage of this section whenever the growth of the city warranted such construction, but we find no convincing testimony that this proposed relief sewer would have obviated the damage which occurred on the four occasions herein referred to.

Over a period of thirty years the Wingohocking sewer has been found to be fully adequate to take in and carry off all rain water falling in its area, except on eight occasions during those years. When originally constructed it was designed in accordance with the most approved scientific principles to drain an area of approximately 4,300 acres, of which territory three-fourths is now improved, and it has been demonstrated to be entirely satisfactory for taking care of all normal rainfalls. No liability can be placed upon the municipality for failure of its officials to furnish a sewer of sufficient capacity to accommodate the surface water flowing into it at times of severe and unusual storms of the character which caused the damage here complained of: Bealafeld v.

Verona Boro., 188 Pa. 629; Metzgar v. Lycoming Twp., 39 Pa. Superior Ct. 602.

The learned trial judge, in restricting the issue to the question of negligent maintenance of the sewer, very properly charged the jury that there could be no recovery by plaintiff for failure on the part of the city to construct a sewer of sufficient size, nor for increasing the burden upon the system by the introduction of new sewer outlets, nor even for failure to construct a subsidiary or relief sewer, unless such had been part of the original plan or scheme of drainage, not carried into effect. He said in part: "Public officials charged with responsible duties, such as the construction and maintenance of sewer systems, have imposed upon them by the law and by their office duties which fall into two classes; one class is termed 'judicial.' Duties of a judicial character are such as demand of an official the exercise of his discretion, his judgment. While the law expects and requires of such official the exercise of his best judgment, it does not assume to require that judgment shall be infallible. It does not give courts and juries the right to review his judgment and say, after the event, that the judgment was improperly exercised, and that the official, thus clothed with the responsibility of exercising his own discretion, failed to exercise it as the court or jury believed he should at the time he so exercised it." This language was appropriate to the circumstances and represents the view taken by this court in Fair v. City of Phila., 88 Pa. 309; Collins v. City of Phila., 93 Pa. 272, and a long line of kindred cases in which the principle has been repeatedly affirmed.

We are convinced that the evidence in this case shows conclusively that the injury suffered by plaintiff was in no degree attributable to the negligence of the municipality, but resulted from the unfortunate position of plaintiff's property in the basin of an extensive drainage area, and that the floods in question were caused by the inability of the sewers to carry off an unusual volume of

surface water which accumulated on the streets during the violent storms which descended upon the region on these occasions. It is well established that there is no liability on the part of a municipal corporation for the flooding of private property from the mere inadequacy of gutters, drains, culverts or sewers (Torrey v. Scranton, 133 Pa. 173; Strauss v. Allentown, 215 Pa. 96; Fritch v. Northampton Boro., 77 Pa. Superior Ct. 385), and as we said in Fair v. City of Phila., supra, page 311, "So long as it is the mere omission, as here, of the authorities, to provide adequate means to carry off the water which storms, and the natural formation of the ground, throw on a lot, the owner thereof cannot sustain an action against the municipality."

The judgment of the court below is affirmed.