Diklich *v*. Johnstown, Appellant, et al.

Argued April 15, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Tillman K. Saylor,* City Solicitor, for appellant.

*Harry Doerr,* for appellee.

OPINION BY STADTFELD, J., July 18, 1935:

Plaintiff brought this action of trespass against the City of Johnstown and the Pennsylvania Railroad Company to recover damages for injuries to her property, alleged to have been caused through the negligence of defendants.

The plaintiff is the owner of a lot of ground in the Eleventh Ward of the City of Johnstown, said lot being fifty feet front on Plum Avenue by two hundred feet deep. On this lot is erected a building which was designed for and had been used for society or lodge purposes. The lower part of the building is composed of concrete blocks and the upper part of wood. Plaintiff acquired this property in February, 1931.

The statement of claim avers that Plum Avenue is a public highway of the City of Johnstown, not permanently improved, but surfaced with ashes and cinder; that said building was erected to the grade of' Plum Avenue as the same was given by the City of Johnstown and as it existed on the ground; that the Pennsylvania Railroad Company made a fill on its property along the southerly side of Plum Avenue, the slope of which fill extended into part of Plum Avenue; that the City of Johnstown has from time to time filled ashes and cinder on Plum Avenue so that the grade of said Plum Avenue, in front of the Diklich property at the time of the bringing of this suit, was raised approximately fifteen inches; that by reason of the fill made by the Pennsylvania Railroad Company on its property along the northerly line of Plum Avenue and the raising of the grade of said street by the City of Johnstown, surface water was caused to flow upon the property of the plaintiff to her damage; that the defendants wantonly and negligently planned, erected and constructed cer-

tain culverts and sewers and changed certain ancient water courses so that the whole of the surface water from the hillside lying east, west and north of Plum Avenue, was diverted in an increased quantity and discharged into Plum Avenue at a point near the property of the plaintiff; that the waters from said hillside are further diverted into said Plum Street by reason of the collection thereof at Woodvale Avenue, a street parallel to Plum Street about four thousand (4000) feet long, and along the same by seven (7) twenty (20) inch open sewers, all draining into said street; that the hillside so drained, is approximately six thousand (6000) feet long and four hundred (400) feet high, and that by reason of the aforesaid change in grade of said street, a "sump" or low point has been created at the point of the plaintiff's property into which the aforesaid surface waters are drained and no provision has been made for carrying the same away, with the result that the same is precipitated upon plaintiff's premises; that the defendants constructed wooden catch-basins entering into the sewer on Plum Avenue, which obstructed the free flow of the water into the sewer so that the sewers became clogged, to the damage of the plaintiff; and that certain sewage, through the negligence of the defendants, was diverted to the property of the plaintiff; all of which resulted in the property of the plaintiff being flooded on August 2, 9, 1931 and September 20, 1931, which high water caused the damage complained of.

The case came on for trial October 11, 1933. At the conclusion of the testimony, the defendant, City of Johnstown, asked for binding instructions which were refused. The jury returned a verdict, exonerating the Pennsylvania Railroad Company from any liability, and assessing damages in favor of plaintiff and against the City of Johnstown, in the amount of $795.80. A motion for judgment non obstante veredicto ex parte City of Johnstown was filed, which was argued before

the court in banc and overruled in an opinion by Mc-KENRICK, J. From the judgment entered on the verdict, this appeal was taken by the City of Johnstown.

Plum Avenue extends from First Street in an easterly direction to the City line. The width of the street is fifty-seven feet; a thirty-seven foot driveway and a ten foot sidewalk on each side of the driveway. The right of way of the Pennsylvania Railroad Company extends the whole way along the southerly side of Plum Avenue. On this right of way is located the main line of the Pennsylvania Railroad Company. The property of the plaintiff is located and abuts on the northerly side of Plum Avenue between First and Second Streets and extends back two hundred feet to Woodvale Avenue. Plum Avenue is located in the basin of an extensive drainage area and surface water collects in the vicinity of Plum Avenue very rapidly during heavy rainstorms, by reason of the fact that the hillside north, west and east is very steep. The Pennsylvania Railroad Company, in 1916 and '17, raised the line of its tracks on its right of way, and immediately south of the Diklich property, the fill is between nine and ten feet. The height of the fill decreases as it extends eastwardly along the right of way.

At First Street, the Pennsylvania Railroad Company, at the time of making the fill, constructed a subway under its right of way on First Street, the subway being about eight feet high, seven and six-tenths feet in width and one hundred sixty-nine and eight tenths feet in length. The bottom of this subway slopes slightly from the southerly side of the right of way toward the northerly side of the right of way. The subway is not used for vehicular traffic, but is used for foot traffic, and the bottom of the subway at its northerly end has an elevation of 1180.78 feet and the elevation at the basement floor of the Diklich property is 1181.24, or slightly higher than the entrance to the

subway. The top of the fill made by the Pennsylvania Railroad Company along the northerly line of its right of way is on the property of the Railroad Company, but the fill slopes into Plum Avenue and along the greater part of Plum Avenue the toe of the slope does not extend beyond the sidewalk line on the southerly side of the Avenue. At a few places it extends slightly beyond the sidewalk line. There are no residences along the southerly line of Plum Avenue.

The City of Johnstown never established the grade of Plum Avenue. The City has opened Plum Avenue for vehicular traffic from First Street to a point between Sixth and Seventh Streets, for a distance of thirty-one hundred (3100) feet. The width of the improved part of the highway is approximately thirty-three feet. Beyond the point between Sixth and Seventh Streets, to the City line, Plum Avenue has never been opened for vehicular traffic, but part of the same has been used for foot traffic by people living on the northerly side of said avenue in traveling towards Conemaugh and the mills of the Bethlehem Steel Corporation.

There is no testimony on the part of the plaintiff, that in making the fill by the Pennsylvania Railroad Company, any well defined water courses have been closed, with the exception of a water course near the "Crow's Nest" (which is beyond the city line and approximately 1300 feet) east of the point between Sixth and Seventh Streets. The part of Plum Avenue east of the point where the same has been improved has been raised by the natural wash of the ground from the hillside and fills made by the Pennsylvania Railroad Company. There is no evidence as to how much of the water complained of found its way through this natural water course. The closing of this natural water course was made by the Pennsylvania Railroad Company and the City of Johnstown would not be

liable in any way for damages that might result in the closing of said water course.

The jury by its verdict found that the foregoing acts on the part of the Pennsylvania Railroad Company were not negligent and did not contribute to the damages complained of by the plaintiff in such a manner that the Pennsylvania Railroad Company would be answerable in damages to the plaintiff. Any acts alleged to have been done by the Pennsylvania Railroad Company may therefore be eliminated from consideration.

The plaintiff also complains that the City of Johnstown diverted the natural flow of the water coming down over the hills to the plaintiff's property, and in the vicinity of plaintiff's property, and changed the drainage system so that the water which formerly was carried away safely was permitted to flow upon plaintiff's land. Another complaint was that the catch basins erected by the city to carry off the water were allowed to become clogged with ashes, cinder and other debris, so that they refused to function, and permitted the water which otherwise would have been carried off, to flow upon her premises. There was no complaint as to the manner in which these catch basins were designed and constructed, but it is the failure to maintain them in working condition that is the subject of plaintiff's complaint.

Twenty or more years before the bringing of this suit, Woodvale Avenue, the first avenue north of Plum Avenue, was graded and improved. One-half of said avenue was paved with brick and the other half was an ash and cinder fill. At the time said avenue was improved, a storm sewer was laid on the avenue and at various points along said sewer, connections were made and run through alleys, connecting with the Plum Avenue sewer. There are also a few subdrains under Woodvale Avenue, which take care of the surface

water that flows from the hillside north of Woodvale Avenue toward Woodvale Avenue, all of which surface drainage, previous to the improvement of Woodvale Avenue, drained to the low point along Plum Avenue and especially to the property of the plaintiff. The improvement of Woodvale Avenue did not in any way interfere with or affect the surface drainage so far as the property of the plaintiff is concerned. The property of the plaintiff extends from Plum Avenue to Woodvale Avenue.

If the improvement of Woodvale Avenue, in the manner described, injured the property of the plaintiff, her remedy for that injury would be the remedy provided by law and that is a petition for the appointment of viewers within six years from the date of said improvement. The evidence clearly shows that Woodvale Avenue was improved approximately twenty years before the plaintiff purchased her property and any damage to said property by reason of the improvement of Woodvale Avenue could not now be recovered for the reason that it is barred by the Statute of Limitations, and any damage at that time would be recovered by the then property owner.

There is also evidence on the part of the plaintiff that certain private sewage was drained in and about the property of the plaintiff. The City has not provided a sewer, nor is it legally required to, for every property owner in the Woodvale section. Many of the properties along the hill have outside toilets and others drain their properties in such a manner that some sewage is carried to Plum Avenue by the surface water. The establishment of drains, sewers and sewage systems by a municipal corporation is the exercise of a legislative or quasi-judicial power and the Council of the municipality is the sole judge of the necessity of a sewer.

The testimony of the plaintiff shows that the properties in the vicinity of Plum Avenue, and especially

that of the plaintiff, did not suffer from high water until the 2nd and 9th days of August and the 20th day of September, 1931, notwithstanding the improvements complained of were made twenty or more years before the 2nd day of August, 1931.

The City of Johnstown, at various times, surfaced the improved part of Plum Avenue with ashes and cinder. Ashes and cinder have been used in surfacing streets north of First Street that intersect Plum Avenue at right angles. Ash fills have been made along Woodvale Avenue, the first avenue north of and parallel to Plum Avenue, all of which, in unusual rainstorms would have a tendency to wash some of said fill and street surfacing toward Plum Avenue, because Plum Avenue is the low point in that drainage area and the lowest point in the drainage area seems to be along the front of Diklich property.

There is also testimony on the part of some of plaintiff's witnesses that the grade of said avenue has been raised from six to nine or twelve inches. There is no testimony on the part of the plaintiff as to what per cent of the increase of said grade has taken place since the property was purchased by the plaintiff. The plaintiff's testimony was limited by the Court, to acts of defendant after she acquired title to the property.

There was no testimony to show that the sewer on Plum Avenue was negligently constructed; that the City failed to properly clean out and maintain said sewer; that the city closed any well defined water courses in the improvement of Plum Avenue, or that the city failed in any way to perform a legal duty imposed upon the municipality from which the plaintiff has suffered damages. Plum Avenue is the low point of the drainage area and naturally where such a street is not permanently improved it is necessary to fill and resurface same, as was done in this case, with cinder and ashes or other road surfacing materials. There is

no evidence that this work was done in a negligent manner.

There is no testimony on the part of plaintiff to show that any natural water courses have been closed, clogged, or in any way interfered with in the improvement of Plum Avenue by the City of Johnstown. The only natural water course, from the testimony of plaintiff, interfered with, is the water course leading from the "Crow's Nest," east of the point where Plum Avenue has been improved by the City and beyond the City line, to which we have referred supra.

In Schroeder v. Borough of Mechanicsburg, Appellant, 74 Pa. Superior Ct. 532, TREXLER, J., said (p. 537) : "The burden of proving negligence was upon the plaintiff and the mere fact that injury resulted after the improvement was completed raises no presumption of negligence. It may be admitted that the result shows that the improvement was not planned according to the best engineering skill, else there would not have been a collection of water at the corner of plaintiff's property, but the adoption of a particular scheme of improvement was with the borough council and it cannot be held for lack of skill in not selecting the very best plan. It might be called upon to answer for negligence in the actual work of construction, or for failure to keep the work in repair after it is completed, but not for lack of judgment in the selection of a plan."

As stated by Mr. Chief Justice FRAZER in the recent case of Aron v. Philadelphia, 310 Pa. 84, 88, 89, 164 A. 777, the language of which fittingly applies to the instant case: "We are convinced that the sole cause of plaintiff's loss in the case was the excessive rainfall, which was shown to be of unusual severity on each of the four dates in question, and beyond the limit for which the sewer was designed. The real complaint of plaintiff is that the city failed to provide sewers of sufficient capacity to carry off, at all times and under

all circumstances, water accumulating on Belfield Avenue which, because of the unusual topography of the vicinity, eventually flowed upon plaintiff's property. 'This is not an obligation, however, which the city assumes or is bound to discharge': Schweriner v. Phila. 35 Pa. Superior Ct. 128' ...... We are convinced that the evidence in this case shows conclusively that the injury suffered by plaintiff was in no degree attributable to the negligence of the municipality, but resulted from the unfortunate position of plaintiff's property in the basin of an extensive drainage area, and that the floods in question were caused by the inability of the sewers to carry off an unusual volume of surface water which accumulated on the streets during the violent storms which descended upon the region on these occasions. It is well established that there is no liability on the part of a municipal corporation for the flooding of private property from the mere inadequacy of gutters, drains, culverts or sewers (Torrey v. Scranton, 133 Pa. 173; Strauss v. Allentown, 215 Pa. 96; Fritch v. Northampton Boro., 77 Pa. Superior Ct. 385), and as we said in Fair v. City of Phila., supra, page 311, 'So long as it is the mere omission, as here, of the authorities, to provide adequate means to carry off the water which storms, and the natural formation of the ground, throw on a lot, the owner thereof cannot sustain an action against the municipality."

We believe that the appellant was entitled to binding instructions, or that judgment n. o. v. in its favor should have been entered.

The assignments of error are sustained, judgment reversed and now entered for defendant.