## Armstrong v. Hughesville Borough

Before Williams, P. J., and Greevy, J.

*Clyde E. Williamson* and *Williamson & Cupp*, for plaintiffs.

*J. Frederick Gehr*, for intervening plaintiff.

*George M. Hess, Jr.*, and *Hess, Casale & Wise*, for defendant.

WILLIAMS, P. J., August 9, 1960.—The Borough of Hughesville constructed a sewer in 1905. The sewer was a combination storm and sanitary sewer and property holders were allowed to tap on to this sewer for a fee of $25. At that time and at the present time, the storm water and sewage is dumped into a creek

in or near the borough which flows into the Susquehanna River.

The Sanitary Water Board of the Commonwealth of Pennsylvania issued an order directing the borough not to dump its sewage into the creek, and as a result the borough council passed an ordinance in 1959 requiring present users of the sewer line to disconnect all sanitary sewer lines leading from their properties on or before July 1, 1960. This ordinance declared that all sewer rental cease on the date of disconnection but in no event should the rental continue beyond July 1, 1960.

Robert Armstrong, Howard Seigfried and the Hughesville Machine and Tool Company commenced an action in equity in which they seek to restrain the Borough of Hughesville from enforcing this ordinance of 1959. All three had been permitted to connect to the sewer system. Intervening in the action as plaintiff is the East Lycoming School Jointure or District comprising the Hughesville Borough School District, the Picture Rocks Borough School District and the school districts of six townships adjoining or near the Borough of Hughesville. The interest of this jointure is that an elementary school of the jointure is connected to the sewer system in Hughesville.

It is to be noted that there are 740 different parcels of real estate upon which the Borough of Hughesville collects taxes and only 240 homes or businesses are connected to this sewer system. The rest of the property owners in the borough have erected septic tanks which seem to have adequately taken care of the sewage from their properties. Although only 240 homes or businesses are connected to the sewer system, 274 rentals have recently been paid to the sewer authorities because on some of the properties there is more than one connection. The Borough of Hughesville now has a population of 2,400 persons.

It is also to be noted that in 1955 the Borough of Hughesville enacted an ordinance which required all persons who had connected to the sewer system to pay a service charge, this being 40 per cent of their properties' water bill. The borough has a water system of its own. These charges have been collected by a borough sanitary authority, which was also established by council action in 1955. The ordinance establishing the authority had intended a sewerage disposal plant, which, according to the testimony, would have cost approximately $400,000. By councilmanic action in 1959, that part of the authority ordinance that had to do with the construction of a municipal disposal plant together with necessary sewer lines was repealed.

It is also to be noted that the assessed value of real estate in Hughesville is $1,800,000 and that real estate taxes for the borough approximate $9,905 a year.

In argument on this matter, the three property owners who originally commenced the action claim that the only legal question to be decided is as to whether or not the ordinance of disconnection of May 25, 1959, violates article 1, sec. 17 of the Constitution of Pennsylvania, which provides:

"No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."

Their argument is based on what they consider a contract with the borough to take care of their sewage. The jointure, however, argues that the ordinance violates not only the State Constitution but also section 1 of the fourteenth amendment to the Constitution of the United States of America which provides, in part, as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person

of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The intervening plaintiff also argues that the ordinance of 1959 is unreasonable and oppressive.

By the Act of May 4, 1927, P. L. 519, as amended, 53 PS §46202, boroughs were given power in Pennsylvania to regulate their sewers and drains. The mere statutory authority to construct sewers or drains does not impose any duty to exercise such authority, and the municipality has discretion to determine whether or not it will construct a system of drains or sewers, as well as discretion to determine the nature, extent, capacity and cost of the system: 63 C. J. S. §1409.

The establishment of sewers and drains by a municipal corporation is the exercising of a legislative or quasi-judicial power, and the legislative body of the municipality is the sole judge of the necessity therefor: Diklich v. Johnstown, 118 Pa. Superior Ct. 283; 18 McQuillin Municipal Corporations, §53.119.

A court of equity will not interfere with the exercise of discretion by a borough in the field of its powers and duties unless it can be shown that the borough has abused its discretion. In the absence of any allegation of fraud, or bad faith, or facts showing capricious action, or abuse of power or a flagrant abuse of discretion, the court may not substitute its judicial discretion or judgment for the administrative discretion which is vested in proper officials. There is a factual presumption that municipal officers are properly acting to the public good, and although the court may have a different opinion or judgment in regard to the action of the municipal authority, such is not sufficient ground for interference; Robinson v. Philadelphia, 400 Pa. 80.

In the instant case, there was no allegation of fraud or bad faith, and we are of the opinion that there is

none. We are also of the opinion that the testimony does not disclose any capriciousness, abuse of power or flagrant abuse of discretion. As we have said, the present sewer system was established in 1905 and discharged into a public stream. Only one third of the property owners have connected to this sewer, and at least one manufacturer, who employs 40 persons, testified that the present system is not adequate in time of slight rainfall as it backs up so that his toilets will not flush. The borough authorities are confronted with a mandate of the Commonwealth of Pennsylvania in which they will have to take care of sewage in some other way than dumping it into the creek. A disposal plant would involve a bond issue of at least $400,000. The other two thirds of the property owners in the borough have satisfactorily disposed of their sewage by means of septic tanks. Sand and gravel underlie Hughesville which seems to have made possible such a disposal feasible. Testimony indicates that Montoursville, a much larger borough than Hughesville, with a similar soil strata, has successfully taken care of its sewage by the septic tank method.

It is true that a sewage disposal plant in Hughesville was considered and that the council had gone so far as to pass an ordinance and lay plans for such. Such plans were changed, and there is no doubt that such change came about because of the desires of a majority of the citizens of the borough.

The court is of the opinion that this is not a case in which we can substitute our judgment for that of the borough officials. If we were to rule otherwise we would be commanding the officials to erect, and the property owners to finance, a sewer system upon testimony which indicates there is another way of sewage disposal in the borough, a way which seems to have been used satisfactorily by the school authorities in a recently built high school property near the borough

boundaries as well as the property owners in the borough not using the system.

We are also of the opinion that the ordinance of disconnection does not violate article 1, sec. 17, of the Constitution of Pennsylvania nor section 1 of the fourteenth amendment to the Constitution of the United States of America. The argument of plaintiffs is that they have contracts with the borough and that the borough in ordering plaintiffs to disconnect is impairing the obligation of these contracts. We are of the opinion that these objecting property owners merely have a permit to tap to the sewer line. The original ordinance of 1905 authorized the street commissioner to issue a "permit to any property owner wishing to tap said sewer." Another ordinance in 1905 provided for a "fee or charge of twenty-five dollars for each and every tap," and in the same ordinance provided that before any person tapped or connected with the sewer that a "permit shall be issued."

The grant by a municipal corporation of the privilege of connecting with its sewers is a license which may be revoked for sufficient cause at any time; a municipality cannot grant a vested right in the use of its sewers: 64 C. J. S. §1805. The governing body of a municipality in the exercise of its discretion may revoke permits as may be warranted by the capacity and ability of the sewers and disposal plant to dispose of sewerage and as the public interest may require. In Ericksen v. City of Sioux Falls, 14 N. W. 2d 89 (S. D.), the city had constructed a small sewer system in its business district and charged $20 for connecting with the same. The system was condemned and another system was proposed. It was insisted that those who paid the $20 acquired a vested right which the city was without power to interfere with. The court ruled that a mere right to tap a sewer system in consideration of a fee is simply a temporary privilege which

must yield when it becomes necessary to discontinue the old system. The court further ruled that even though it were granted that the connecting fee was a contract, such a contract would have been beyond the power of the city to make, that police power may not be bartered away. In A. F. Reese, Inc. v. Borough of Hanover, 68 York 57, it was held that when an agreement providing for the rendering of sewer services did not specify the duration or term of the contract, the contract may be terminated at will. It has also been held that the abandonment or discontinuance of a sewer or drain constructed by a municipal corporation will not render the municipality liable for injuries to the property resulting from the abandonment if the property was not left in any worse condition than it was when the sewer or drain was constructed: 18 McQuillin Municipal Corporations §53.120. In Finley v. the City of Kendallville, 90 N. E. 1036 (Ind.), a drain constructed partly of open ditch and partly of four and five inch farm tile was abandoned by the City Council because the railroad company filled up this right of way over which part of the drain ran. It was held in this case that the city could discontinue its use of the drains if the property owner was left in no worse condition as to the surface water than before the drain was constructed even though he was compelled to fill his own lot to exclude surface water that was brought there by the city. In Martinez v. Cook, 56 N. M. 343, 244 P. 2d 134, a culvert was filled in through which surface water from upper property owners had passed. It was ruled that the legislative body of the municipality was the sole judge of the necessity therefore. Also see Erickson v. the City of Sioux Falls, supra.

We are, therefore, of the opinion that we do not have the right to enjoin the Borough Council of Hughesville from enforcing its ordinance of 1959. . . .

*Order*

And now, August 9, 1960, it is ordered, adjudged and decreed as follows:

1. That the findings of fact and conclusions of law as heretofore found in this opinion are made a part of this decree.

2. That judgment be and it is hereby entered for the defendants.

3. That the cost of these proceedings be paid by the plaintiffs.

4. That an injunction is refused.

The prothonotary is directed to enter this decree nisi, to give notice to the parties or counsel of record of this decree, and if no exceptions are filed within 20 days hereafter the decree shall be entered as a final judgment by the prothonotary as of course. The said judgment is to be indexed by the prothonotary against plaintiffs on the law side of the court.