Eli S. Sentman *vs.* The Baltimore and Ohio Railroad Company.

*Overflow of Railroad ditches—Extraordinary rain-fall—Act of God.*

In an action against a railroad company to recover damages for injuries to the plaintiff's property, caused by an overflow of surface water from ditches and drains on the defendant's road, there was evidence that these were in good condition and always kept open; that a storm of rain caused a large cave-in during the night and filled up the ditch on the north side of the road, and dammed up the water; that it was an extraordinary rain, continuing about five hours; that it was the most extraordinary rain-fall, a witness, who had lived in the immediate section about seventy years, stated he had ever known. HELD:

That there was testimony legally sufficient to go to the jury upon the question whether there was such an extraordinary and unusual rain-fall as constituted an Act of God relieving the railroad company from liability for injuries done the plaintiff's property.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial below, after the evidence was closed on both sides, the plaintiff offered the two following prayers:

1. If the jury find that the plaintiff owned the tract of land mentioned in the declaration, and that the defendant, for the purpose of locating and constructing its railroad, purchased from certain persons, other than the plaintiff, certain lands, and located and constructed its said railroad thereon, and that prior thereto the natural flow of the surface drainage of said lands, or any of them, was in a different direction from the plaintiff's

land, and that the defendant, by means of a deep railroad cut and by artificial structures and ditches through said lands, purchased from persons other than the plaintiff, or any of them, changed the direction of the natural flow of said surface drainage from said lands, or any of them, and turned it towards and caused it to flow in and upon the plaintiff's said land, by means of which the plaintiff was injured, then the plaintiff is entitled to recover for such damage as occurred within three years before the date at which this suit was brought.

2. If the jury find that the plaintiff owned the tract of land mentioned in the declaration, and that the defendant, for the purpose of locating and constructing its railroad, purchased from persons other than the plaintiff, certain lands, and located and constructed its railroad thereon, and that prior thereto the natural flow of the surface drainage of said lands, or any of them, was so diffused over the surface of a wide area that it came to the plaintiff's land in a harmless condition; and further find that the defendant, by means of a deep railroad cut, and by artificial structures and drains or ditches on said lands so purchased from persons other than the plaintiff, gathered the said surface drainage in a body, and caused it to be discharged with force and violence in and upon the plaintiff's said land, whereby the plaintiff was damaged, then the plaintiff is entitled to recover such damage as occurred within three years before this suit was brought. But if the jury believe that some portion of the damage mentioned in this instruction was the result of an extraordinary rain, which could not reasonably have been anticipated, then the plaintiff is not entitled to recover for that portion of the damage which was due solely to said storm.

The defendant offered eight prayers, the fourth and fifth of which are set out in the opinion of this Court; the others are as follows:

1. If the jury find the deed of the plaintiff to the defendant, dated second day of November, 1883, offered in evidence before them, that then, by a proper construction of said deed, a full and free license and authority was thereby granted to the defendant corporation, its successors and assigns, to locate, construct, repair and forever maintain and use the said railroad mentioned in the evidence, upon, through and over his said lands mentioned in said deed. And if the jury find that the laying of the drains or ditches on the land purchased from the plaintiff mentioned in the evidence, and the making of the embankment thereon, were reasonably necessary for the construction or the maintenance of said railroad, and the same were laid or constructed with reasonable care and skill, that then the plaintiff cannot recover in this action for any injury caused thereby.

2. If the jury find the deed offered in the evidence before them, from the plaintiff to the defendant corporation, that then, by proper construction of said deed, full and free license and authority were thereby granted to the defendant to locate, construct, and forever maintain a railroad upon the land mentioned therein. And if the jury find that the defendant, in pursuance of the authority contained in said deed, did locate and construct a railroad upon the land mentioned in said deed, and that the said railroad was constructed and maintained with ordinary care and skill, that then the plaintiff is not entitled to recover in this action for any injury to his adjoining property caused by the construction of said railroad over the land mentioned in said deed, even although they may find that the flow of water over plaintiff's land was accelerated and increased, causing injuries to the plaintiff's premises.

3. Even if the jury find that the plaintiff's property was injured by an increased flow of water thereon, yet,

before the jury can find a verdict against the defendant for such injuries, or for any injuries occasioned thereby, they must find that said increased flow of water was caused or contributed to by the acts or negligence of the defendant.

6. If the jury find from the evidence, that during the storm spoken of by the witnesses, in the month of July, 1891, if they shall so find, that the side ditches along defendant's railroad were made with reasonable care, and were filled up by the sudden caving in of the banks along the same, caused solely by an extraordinary rain which could not reasonably have been anticipated, if they shall so find, by reason of which the water in the cut, mentioned by the witnesses, flowed from defendant's right of way and reached the plaintiff's premises, causing injury to the same, that the defendant is not responsible for said injuries unless it or its agents had time and opportunity to remove said obstructions before the injury occurred.

7. The burden of proof is upon the plaintiff to show that the injury complained of was caused by the defendant, and unless the plaintiff shall satisfy the jury by the preponderance of testimony that it was caused by the defendant, the plaintiff is not entitled to recover, and their verdict must be for the defendant.

8. The jury are not at liberty to consider in the way of damages any injury to the plaintiff's property, which has occurred since the time this suit was instituted, or which occurred more than three years before that time.

The Court (STUMP and WICKES, J.,) granted the plaintiff's prayers, as also those of the defendant.

To the granting of the defendant's prayers, the plaintiff excepted generally, and also excepted specially to the fourth, fifth and sixth prayers. The exception to the fourth prayer is contained in the opinion of this Court.

Sentman *vs.* Balto. & Ohio Railroad Co.

The plaintiff excepted to the defendant's fifth prayer, on the ground, *first*, that there was no legally sufficient evidence before the jury upon which it could be properly left to the jury to find, that the injuries sued for in this action were caused by an extraordinary rain which could not reasonably have been anticipated; *secondly*, because there was no legally sufficient evidence of any such extraordinary rain as comes within the description of what is called an "act of God;" *thirdly*, because there was no legally sufficient evidence before the jury that the waters escaped from the defendant's right of way and ran upon the lands of the plaintiff solely in consequence of the clogging or filling up of defendant's side ditches, occasioned by the sudden caving in of the land along said right of way or otherwise, caused by an extraordinary rain which could not reasonably have been anticipated; and, *fourthly*, because there was no legally sufficient evidence to establish that the injuries sued for were occasioned solely by an extraordinary rain, which could not reasonably have been anticipated, filling up or clogging defendant's side ditches.

To the defendant's sixth prayer, upon the ground, *first*, that there was no legally sufficient evidence that the injury sued for was caused solely by an extraordinary rain which could not reasonably have been anticipated; and, *secondly*, because there was no legally sufficient evidence that the damage specified was caused solely by the sudden caving in of the banks along the side ditches of defendant's railroad.

The Court overruled all the exceptions and the plaintiff excepted. Judgment was entered for the defendant, and the plaintiff appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, McSHERRY, BOYD, and BRISCOE, J.

*H. Arthur Stump*, and *Albert Constable*, for the appellant.

*Geo. Dobbin Penniman,* and *John S. Wirt,* (with whom was *John K. Cowen,* on the brief,) for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This was an action on the case instituted in the Circuit Court for Cecil County, by the appellant against the appellee, to recover damages for alleged injuries to the appellant's property, caused by an overflow of surface water from ditches and drains on a railroad constructed by the defendant corporation. The appellant is the owner of a farm in Cecil County, and contends that the defendant company in the construction of its railroad had, by artificial cuts, fills and drains, changed the natural surface drainage of certain lands, and had caused the water to flow upon his land, so that in the month of August, 1889, and of July, 1891, his property had been seriously damaged thereby. The defence on the part of the company was, that the damage complained of was caused by an extraordinary and unusual rain-fall, that is, by the *vis major.*

The verdict and judgment were in favor of the defendant, and the plaintiff has appealed.

At the trial the Court granted all the instructions asked for on both sides, and the only exception is to the granting of those on behalf of the defendant. The main objection is urged to the fourth and fifth prayers, and it is upon these that the appellant rests his appeal. It is, therefore, on these two prayers that the questions arise to be decided by this Court. In the fourth instruction the jury were told, that if the injuries to the plaintiff's property were caused solely by an extraordinary and unusual rain-fall or flood, and not by want of ordinary care and skill upon the part of the defendant in the construction or maintenance of its railroad, then their verdict should be for the defendant. To this in-

struction the plaintiff made special exception, on the ground, first, that there was no legally sufficient evidence before the jury upon which it could properly be left to it to find, that the injuries were caused solely by an extraordinary and unusual rain-fall or flood; and secondly, because there was no legally sufficient evidence of any such extraordinary or unusual rain-fall or flood, as comes within the description of what is called an "act of God."

The exception, both general and special, was overruled. We have carefully examined the evidence set out in the record, and are of opinion that there was no error in the overruling of this exception. The facts upon this branch of the case are these: McNamee, a witness for the defendant, testified that there was a very heavy rain on the night of July 28th, 1891, and it rained harder than he had ever known it during the seven years he was there; don't believe he had ever known it to rain harder in his life.

The witness Rutter stated, that he lived in sight of plaintiff's house, and had resided there more than thirty-five years, that he remembers the storm of July, 1891, and thinks it was the heaviest rain he had ever known in that locality. There was an extraordinary fall of water.

The witness Craig testified, that he had resided in that section for fifteen years, that he remembers the storm of July 28th, 1891, and it was an 'extraordinary rain. It began to rain between 10 and 11 o'clock at night, and rained continuously until about 4 o'clock the next morning. It was the heaviest fall of rain he had ever seen in the same time. He may have seen it rain as hard, but he never saw it rain so hard so long. He was sitting up with a sick man, John Russell, who lives right at the station. He noticed the storm particularly, and went out on the porch two or three times during the

night.   There may have been as much of a rain-fall in the flood of 1876, but then it rained two days and nights.

And it was in testimony by the witness Jackson, that he had lived in the immediate section for about seventy years, and the storm of July 28th, 1891, was the most extraordinary rain-fall he had ever known.

And, in reference to the damage done by the flood of 1889, there was evidence on the part of the plaintiff that the character of the damage done by the two floods was of the same kind, but the amount done by the flood of July, 1891, was far greater than that done by the flood of August, 1889; that Amos H. Rutter and Absolom Jackson had appraised the damage done to the plaintiff's property by the flood of August, 1889, and that when he (Moore) went there at the request of plaintiff to appraise the damage done by the flood of 1891, he asked Mr. Absolom Jackson whether he (Jackson) had not appraised the damage done to the plaintiff's property by the flood of August, 1889, at $250; and when he answered that he had, said to Jackson, "don't you think the damage done by this flood three times as large as that done by the flood of 1889?"   And Jackson replied, "that he did."

There was also evidence that the ditches and drains were in good order, and always kept open, and that such was their condition before the storm.   That the storm caused a large cave-in during the night, and filled up the ditch on the north side of the road which dammed up the water.   Without, therefore, entering into any further recital of the facts, we are clearly of opinion that there was evidence legally sufficient to require the case to be submitted to the jury, and therefore there was no error in overruling the exception to this prayer.

The fifth prayer of the defendant reads thus:   "If the jury find the Acts of Assembly of 1826, chapter 123, and 1884, chapters 232 and 233, that then, by a

proper construction of said Acts, the defendant was empowered to locate and construct the railroad mentioned in the evidence, and to make such cuts and embankments as were necessary for the same, and if they find, by reason of the cut mentioned in the evidence, large quantities of surface water from the lands of the adjoining proprietor or proprietors, upon the occasion spoken of by the witnesses, ran upon the defendant's right of way; and further find that said waters escaped from defendant's right of way, and ran upon the lands of the plaintiff, solely in consequence of the clogging or filling up of the defendant's side ditches, occasioned by the sudden caving-in of the lands along said right of way or otherwise, caused by an extraordinary rain which could not reasonably have been anticipated; if they shall so find, that then, before the plaintiff can recover for any injury occasioned thereby, the jury must be satisfied that said clogging or filling up of said ditches was due to a want of ordinary care upon the part of the defendant.''

This instruction, in connection with the other prayers, we think, placed the case properly before the jury.

In the case of the *Phila., Wilm. and Baltimore Railroad Company vs. Davis,* 68 *Md.,* 291, where a railroad company undertook to alter an established outlet through which the surface water was carried, this Court held, that it was incumbent on the corporation to have the work done in a careful and skillful manner. If done carelessly and negligently so that, as a consequence, injury to the plaintiff ensued, an action for damages was maintainable. It is well settled that the ''construction and repair of sewers, (the same rule would apply to railroad ditches and fills,) are simply ministerial duties, and for any negligence in so constructing a sewer, or keeping it in repair, the municipality who has constructed and owns it, may be sued by a person whose property is thereby injured.'' *Johnston vs. District of Columbia,* 118 *U. S.,* 19.

The rule was established by this Court in *Davis' Case,* 68 *Md.,* 291, that the outlet must be of ample capacity to carry off all the water likely to be in it.

But the rule is not applicable to an extraordinary and excessive rain-fall, which is held to be *vis major.* Such infrequent and extraordinary occurrences cannot be foreseen and provided against, and for damages caused by them no one is responsible.

In the case of *Gulf, Colorado and Santa Fé Railway Co. vs. Pomeroy,* 67 *Texas,* 498, it was held, that "if the overflow was of such an extraordinary character that railroad engineers of ordinary care and prudence in the construction of the embankment and culverts could not reasonably be expected to have anticipated and provided against, the railroad was not liable."

In the case now under consideration the prayers as offered seem to us fairly to lay down the law of the case on all the questions, and as we discover no substantial error in any of them, and as the evidence was legally sufficient to submit the case to the jury, the judgment will be affirmed.

*Judgment affirmed.*