## OKLAHOMA CITY v. EVANS.

No. 25898.    Sept. 25, 1935.

Harlan T. Deupree, Municipal Counselor, and Ralph J. May and Robert L. Berry, Asst. Municipal Counselors, for plaintiff in error.

Walter & Hilpirt, for defendant in error.

PER CURIAM. Laura Evans, as plaintiff, sued the city, as defendant, to recover damages to her personal property at 2506 Southwest Thirtieth Street between Hale and Villa avenues and south of Twenty-Ninth street, in Industrial addition to Oklahoma City, from surface waters alleged to have been wrongfully and negligently diverted by the city, the acts of negligence alleged by her against the city as the proximate cause of such damages being that the city had undertaken to drain the surface waters from Twenty-Ninth street to Grand Boulevard, down said avenues and along said boulevard, but had so negligently and carelessly constructed and maintained the drains and ditches and made them so shallow and narrow that the water was thrown out of them and in time of heavy rains flowed over the land between said Hale and Villa avenues; that where said drains and ditches intersected cross streets there were not sufficient culverts to carry it across, but it was allowed by the city to spread out over all the lands between said avenues; that wherever there were any culverts at intersecting streets they were so small and so carelessly installed that they would not carry the water but filled up with sand and refuse; that the water between Hale and Villa avenues north of Twenty-Ninth street and north to Twenty-Fifth street drained south to and emptied into the sewer at Twenty-Ninth street and Villa avenue, but that said sewer was so small it would not take care of the water after a heavy rain, and said water would flood the land between said avenues south of Twenty-Ninth street, that the land between said avenues and south of Twenty-Ninth street southwest to Grand boulevard slopes to the north; that the conditions complained of had existed from and after the

date said addition was taken into said city, to wit, in April, 1910, and that on or about the 1st day of June, 1931, and for 30 days thereafter, there was an almost continuous rain coming by spells, and on account of the negligence and carelessness of the city in constructing and maintaining said drains, ditches and sewer her said property was damaged in the sum of $50 in that her garden was washed out and destroyed, her house flooded and certain of her household goods and groceries ruined. This statement of her allegations against the city is compiled from her petition and the amendment thereto taken together, and on the trial a further amendment was allowed so as to include some chickens in the damaged and destroyed property. After its general demurrer to the amendment to plaintiff's petition had been overruled, the city answered by general denial, except admitting its municipal existence, further pleading grounds of general demurrer, and further pleading as a bar the two years' statute of limitations of subdivision 3 of section 101, O. S. 1931, and further pleading that if plaintiff was damaged as alleged same was caused solely by an act of God, in that at the time of said injury and damages there occurred in Oklahoma City and in the vicinity of plaintiff's property an "extraordinary, unusual and unprecedented rain and cloudburst, greater in volume, extent and severity than had been known in said vicinity, which fell in such a volume of water as to cause any injury or damage which the plaintiff may have suffered," and that such injury and damage, if any, was entirely due to said act of God, and specifically denying any negligence or any diversion of surface waters, and also pleading contributory negligence. The parties have been and will be hereinafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

It is apropos to state that this suit originated in the justice court, where the bill of particulars was filed on the 7th day of October, 1932, and that it was therein alleged that the time of the heavy rains resulting in the damages complained of was "on or about the 15th day of June and for several days thereafter"; that so far as the record discloses the case was tried in the justice court on the bill of particulars, with that allegation as to time therein and with no formal answer or other pleading of the defendant, which, of course, was not required; after the trial before the justice the case was appealed to the district court, the

appeal being lodged in that court on October 27, 1932, and thereafter the case was evidently transferred to the court of common pleas, and there filed on January 16, 1934; that thereafter, on February 24, 1934, the amendment to plaintiff's petition hereinabove referred to was filed, and in this amendment we find one of the items of amendment as follows:

"Plaintiffs further amend said petitions by changing the phrase on or about the 15th day of June to on or about the 1st day of June, 1931, and for 30 days thereafter".

—that thereafter, on February 28, 1934, defendant filed its general demurrer to the "amendment to petition," but before same was acted upon by the court the defendant, on March 1, 1934, filed its answer, reciting therein that it was "without prejudice to its rights to be heard upon the demurrers filed herein, the same not yet having been disposed of"; the record does not show that plaintiff filed any reply to that answer, but, as this was a case originating in the justice court, no formal reply was required, but even if it was, defendant having voluntarily gone to trial without reply being filed, it was waived (Allison v. Bryan, 26 Okla. 520, 109 P. 934), but no point is raised on this; that the record shows that this is one of several similar suits by various individuals against the defendant city, same being common pleas court Nos. 1153, 1138 (this case), 1141, 1139, 1140, 1152, 1154 and 1155, respectively, each case having a different plaintiff or plaintiffs, but all represented by the same attorneys, and that on February 17, 1934, and before defendant filed answer, a single stipulation, but covering all of said cases and signed by the same attorneys for all the plaintiffs and by Ralph J. May, assistant municipal counsellor, as attorney for the defendant, was filed in said common pleas court in an effort to expedite the trial, agreeing that all of said cases should be tried jointly in so far as the evidence would permit, waiving trial by jury, and thereafter all the pleadings by both sides hereinabove mentioned are captioned so as to include all the cases, and it seems from the record that all of the cases were consolidated for the purposes of trial, and that in the trial the case was first tried on the question of the primary liability of the defendant for the alleged damages in the area involved, and the court found against the defendant on that question and then proceeded to try this particular case (the Evans case No. 1138) as to the

588

specific damages, if any, Mrs. Evans should recover, and also found against the defendant on that question and gave judgment for her in the total sum of $20 and interest and costs, and in the journal entry of said judgment only the plaintiff, Laura Evans, is listed as plaintiff and the journal entry and subsequent proceedings only attempt to relate to this specific case (No. 1138), and, consequently, on this appeal only that one case is before this court for review, the case having been brought here by the defendant after its motion for new trial had been overruled and due exceptions thereto. It was also stipulated at the trial that the land involved was taken into the city in the year 1910, "and has ever so remained up to this time," and that the claims for the alleged damages were filed with the city in all cases except the case of A. J. and Nellie Polk, and as to that claim the claim itself filed with the city was put in evidence.

At page 139 of the case-made, it is disclosed that the trial court, after having personally inspected the area involved at the conclusion of the trial on the question of primary liability for the area, made an exhaustive and very interesting statement of his views, which is referred to by defendant's counsel in their brief as a "statement of his findings," but same is not incorporated in the journal entry of the judgment. As no requests for any special findings or conclusions by the court were made by either side and the findings and judgment of the court are embodied in the journal entry containing general findings, the said "statement of his findings" not being embodied in the journal entry can be considered only as the oral opinions expressed by the court upon the law and the facts and performs no office in the case-made. Dixon v. Stoetzel, 136 Okla. 302, 276 P. 780; Smart v. Billings, 169 Okla. 26, 35 P. (2d) 923.

Plaintiff contends in her bill of particulars filed on October 7, 1932, that the heavy rains resulting in her damages occurred "on or about the 15th day of June and for several days thereafter," and, although no year is designated after the word "June" we assume from further statements and recitals in the record that it was the year "1932." Evidently, however, she was mistaken in the date, as we find in the amendment to petition, which amendment was filed on February 24, 1934, this statement above referred to:

"Plaintiffs further amend said petitions by changing the phrase **on or about the 15th day of June** to on or about the 1st day of June,

**1931, and for thirty days thereafter."** (Emphasis ours.)

This takes the date of the occurrence of the alleged damages back to a date approximately a year prior to June 15, 1932, evidently first intended to be alleged. At the time of the trial, the allegation as to such date, therefore, stood as "on or about the 1st day of June, 1931, and for thirty days thereafter." Yet, in answering subsequent to the filing of said amendment to petition, the defendant, among other things, refers only to the heavy rains of June, 1932, and bases its plea of an act of God thereon (see paragraph 5 of said answer on page 16 of case-made). The case was also evidently tried by both sides on the theory that the damages were claimed as the result of the heavy rains in June of the year 1932 and not in June of the year 1931. The plaintiff in the beginning of her testimony on pages 142 and 143 of the case-made had her attention directed by her counsel to the floods in the months of June and July in 1932, and testifies that the damages which she claims were caused by the heavy rains and flood waters at that time, and she limits, in her cross-examination, all her damages to June, 1932, and, throughout the record, it is apparent that both sides considered and tried the case on the theory that the rains and flood waters causing the damages, if any, occurred in June, 1932, and, under such circumstances, we will consider plaintiff's petition again amended so as to conform thereto.

Although the defendant assigns eleven specifications of error, its counsel in their brief consolidate them into two groups and treat them under two propositions, to wit: First, there is no law which requires a city to construct storm sewers or handle surface water, consequently, there can be no liability on the part of the city if this is not done; second, since the city is not bound in the first instance to construct storm sewers or guard against the peril of natural surface water, it surely is not bound to guard against dangers of extraordinary rains. If the first proposition is correct, it would necessarily follow that the second one is correct.

The plaintiff by her own testimony having limited her damages to those arising out of the heavy rains and flood of June, 1932, it will be necessary to consider the conditions as they existed at that time and as bearing thereon the conditions previously existing in so far as they continued to exist up to the time of these heavy rains and flood of June, 1932. Of course, we are dealing in this case with surface waters and not channel waters.

It is well settled that surface water is a common enemy, and every proprietor must fight for himself as long as it takes its natural course, and a municipality is under no obligation to prevent the natural flow of surface water or to protect individual property owners therefrom, even though they may be so unfortunate as to own property below the level of the street, or to provide means for carrying off surface water collecting upon private property, unless, of course, made necessary by such municipality's own act. The substance of this rule may be found in 43 Corpus Juris, page 1143, section 1902. Did the defendant city divert such surface waters in this case? If so, how and by what act? It appears from the evidence that when the defendant took this affected area into the city limits in 1910, it crowned up the center of the street areas of Hale and Villa and other avenues so as to form a roadway, and, in doing the crowning, small ditches were formed on the sides, and, of course, these ditches would lead the water down to the lowest point of the street itself, the ditches running parallel to the streets, and that there was no attempt thereby to divert the flow of any surface waters in that area, and whatever diversion, if any, it was only ancillary to and in connection with the crowning of the road, and that some culverts were constructed in the area but they were also only ancillary to and a part of the crowning of the roadway to preserve the surface of the road, and in the winter of 1928 and 1929 the city built a concrete storm sewer four feet square north from the end of the culvert that then existed under the pavement on Twenty-Ninth street, that culvert being two feet high and eight feet wide, making its area the same as the area of said sewer, and, in general, this seems to have been all that the defendant had done, except, of course, to maintain these roadways, ditches, culverts and sewer, up to the time of the heavy rains and flood of July, 1932, with which we are concerned in this case. On the trial, it was stipulated that the Twenty-ninth street highway paving and its grade at all times mentioned in this case as well as the culvert under discussion under said Twenty-Ninth street were constructed by either the state or the county. D. L. Wilson, a civil engineer, in the employment of the city for six years, testified that this sewer as designed had a little larger capacity than the culvert, and that it was sufficient to take care of the amount that would come in through the culvert, and he explains the connection made between the culvert and the sewer as being a tight connection, and says

that the fact that the sewer is just three feet and six inches below the flow line of the culvert would have a tendency to accelerate what water would come through there, due to the drop in the water surface; that he does not know (and no one else has stated there was) of the city changing that culvert in any manner other than hooking on the north end of it. He seems to be both an intelligent and a fair witness and the mere fact that he happened to be employed by the city should not warrant us in ignoring and rejecting his testimony.

There is no statute in Oklahoma known to us or that has been called to our attention that puts any duty upon a municipality to construct sewers or drains to take care of surface waters, and, as a general rule, in the absence of such mandatory duty, such municipality is not liable in damages for failure to provide sewerage or drainage, unless they are made necessary by its own act. If, however, a municipality does construct sewers and drains sufficient to meet all demands upon them under ordinary conditions, it is not liable because they may prove inadequate to carry off surplus waters from an extraordinary storm or flood, unless the statute makes it liable as an insurer. 43 Corpus Juris, page 1136, section 1895. This rule seems to be supported by the authorities to the extent that it may be regarded as the general rule. Oklahoma has no such "liable as insurer" statute.

The best definition of an "extraordinary storm or flood" that has come to our attention is that given in the case of Spitzer v. City of Waterbury (Conn.) 154 Atl. 157, as follows:

"'An extraordinary storm' is not necessarily an unprecedented one but one that happens so rarely that it is unusual and not ordinarily to be expected."

The evidence in this case discloses without any doubt that there was a great rainfall in the affected area during the month of June, 1932. It is in the evidence by the records of the United States Weather Bureau at Oklahoma City that the rainfall for the month of June, 1932, at Oklahoma City, was 14.12 inches, which was 10.45 inches above the June normal; that the **greatest** monthly total at Oklahoma City since the records began in 1891 **(approximately 40 years before June, 1932)** and to include February, 1934, was the 14.12 inches in June, 1932; that the **second greatest** amount of record for any month at Oklahoma City was 12.33 inches in June, 1904 **(28 years before June, 1932)**; and that the annual average precipitation

590

at Oklahoma City since the record began (**in 1891**) was 31.67 inches; and this undisputed **record** evidence, together with the testimony of the witnesses on the trial of this case showing the great magnitude of these rains of June, 1932, establishes beyond doubt that these rains which caused the damages of which the plaintiff complains come clearly within the above definition of an "extraordinary storm or flood." From all the evidence, it is our opinion that the damages suffered by plaintiff were proximately caused by just that situation and not by any wrongful or negligent act of the defendant in diverting any surface waters. Even if there had been any diversion of surface waters by the city, there is no evidence in the record to show that such diverted surface waters were not sufficiently taken care of under ordinary conditions.

As to the statute of limitations pleaded by the defendant, that is neither urged nor discussed in its brief. However, we cannot see on what theory it is based. It is not applicable, this case having in fact been begun within the two-year statutory period.

It is true, as contended by plaintiff, that one of the leading cases in this state as to the liability of a city for taking care of surface waters is the case of City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867, but it can have no application to this case in view of the facts as we find them from the evidence in the record, and, for this same reason, we do not consider the other leading case of Adams v. Oklahoma City, 20 Okla. 519, 95 P. 975, which is so earnestly stressed and relied upon by defendant, as having any particular application to this case.

On account of the view and conclusions herein announced, a new trial of this case could serve no useful purpose. The judgment of the trial court is, therefore, reversed and the case remanded, with instructions to the trial court to vacate the said judgment and to render judgment for the defendant city that plaintiff take nothing, and for costs.

The Supreme Court acknowledges the aid of Attorneys John L. Norman, W. C. Alley, and J. L. Newhouse in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Norman and approved by Mr. Alley and Mr. Newhouse, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.