## SAMUEL EISENSTEIN ET AL. *v.* MAYOR, COUNSELOR AND ALDERMEN OF ANNAPOLIS ET AL.

[No. 30, October Term, 1939.]

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Louis Straus* and *Emanuel Klawans,* for the appellants.

*George W. Haley,* with whom was *Edward G. Chaney* on the brief, for Mayor, Counselor and Aldermen of Annapolis, appellee.

*George E. Rullman,* for Annapolis Metropolitan Sewerage Commission, appellee.

SHEHAN, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Anne Arundel County, in equity, dismissing the bill of complaint, and refusing to grant an injunction against the Mayor, Counselor and Aldermen of the City of Annapolis, and the Annapolis Metropolitan Sewerage Commission, appellees, at the suit of Samuel Eisenstein and Lena Eisenstein, his wife, appellants. These appellants are the owners of a lot of ground located at the corner of Calvert and Northwest Streets, which they had acquired by deed from Jack Lipchin and wife, dated June 9th, 1930, and duly recorded. This lot was improved by a motion picture theatre known as the "Star Theatre" and the bill charges, among other things, that the appellees have constructed and maintained a system of drain-

age because of which large quantities of water and sewerage were collected, at the corner of the said streets, from an extensive area, and from thence flowed over, in, and upon the property of the appellants, flooding the first floor of the theatre on a number of occasions and causing great damage; that the said injuries were directly due to the improper scheme of drainage. The appellants allege that they have no adequate remedy at law and, unless the appellees are restrained, the injury and damages will continue, and are irreparable unless this court intervenes on their part by injunction to prevent the transportation of sewerage, drain and flood water onto their premises. The prayer in the bill of complaint is for an injunction and for other relief. It should be observed that there is no allegation in the bill, or testimony in this case, that the sewer or drain pipes were negligently constructed or maintained.

After the taking of testimony by the parties to this suit, the relief, as prayed, was denied, and the bill dismissed; from which action this appeal is taken.

There is little conflict in the testimony in this case. The appellees set up as a defense the peculiar contour of the lands surrounding the theatre building and the impossibility of remedying the situation complained of, without great and unwarranted expense, and that sewers and drains have already been constructed sufficient to dispose of all water resulting from usual and ordinary rainfall, and that the flood condition complained of only happens when cloud bursts and extraordinary and extensive fall of rain occur, for which the appellees are not responsible and are not required to provide by drains or otherwise. Samuel Eisenstein testified that the lowest point, in an area of about thirty acres surrounding his property, was immediately in front of his theatre, or at the corner of Calvert and Northwest Streets, and that the scheme or plan of drainage carried away surface water that accumulated from ordinary and usual rainfall; that the under-drains, and especially that one twenty-four inches in diameter which runs under his

theatre building, are ample to dispose of the ordinary rainfall; that the flood condition never existed in winter and, "A. I have it in summer time when have a cloud burst and heavy rains. Q. Thunder shower? A. If it is a great one, yes." That during the year 1938, to the time of giving his testimony, there were no flood conditions, but the previous year, 1937, they occurred nine times, and in 1936, once or twice. Prior to that time they happened on even fewer occasions.

The property was purchased by the appellants in 1930 and from that time down to 1938 there was no effort made to restrain the appellees with respect to the flooding of the appellants' property, and only then after 1937, when the extraordinary and unusual conditions existing caused the floods complained of. This inference follows from the testimony of Mr. Eisenstein himself, who said that these floods only occurred after severe thunder storms or cloud bursts, as above detailed. A number of years before the "Star Theatre" was constructed this twenty-four-inch pipe was built, and ran under the shop of Mr. Feldmeyer, which was then located on the lot in question. All of this construction had the approval of the State Board of Health. There is no charge in the bill of complaint, and nothing in the testimony, to show that the construction was negligently made or that the drains were negligently maintained. It is upon these facts that the appellants rely for the relief prayed, and the appellees for a refusal of the relief sought.

The lowest point in this area is at the corner of Northwest and Calvert Streets, which is admitted by both sides. The large area of some thirty acres, sloping in the direction of, and toward, this point is not disputed, but affirmed by witnesses on both sides. The testimony is that the water draining toward this point had not been increased in volume by any construction that had been made, but on the contrary had been decreased by diverting from the twenty-four-inch pipe under the theatre the sewerage that formerly went through it, and only rain water since about 1933 was

permitted to flow through it, and even that had been materially diminished by the construction of sewer or drain pipes at two places within this area, that diverted the surface water to a considerable extent, so that it cannot be held that, through any construction or diversion of water, or enlargement of the area drained, additional quantities of surface water were diverted to this low point.

The testimony of Mr. Eisenstein with regard to this sufficiency of the drain pipes, except on occasions where there was excessive rainfall, finds support in the testimony of Mr. Burwell, the engineer of the sewerage commission, and of Mr. Bean, the city commissioner, and other witnesses. There is no testimony in the case that the sewers or drains were improperly or negligently constructed, or that the municipal authorities failed to keep them in proper repair and free from obstructions. In order to recover on these grounds, such allegations must be made and proven. It seems to us that the question of negligent construction, and improper maintenance, and the responsibility of the appellees for such, may be dismissed without further consideration, because there are no allegations in the bill or testimony offered, in that respect.

We are, therefore, left with the question as to whether or not the appellees failed to comply with such obligations as the law places upon them with respect to the disposal of sewerage and surface water by a failure to supply adequate means in that behalf. We begin the consideration of this question by determining what responsibility rests upon the municipality in that respect.

It is doubtless the burden of the municipality to construct and maintain drains or outlets of sufficient capacity to carry off all water diverted from its usual flow, or where the area to be drained has been intentionally increased, but where there is not such diversion, and certainly such is the testimony in this case, then the obligation does not rest upon the municipality to do more than take care of the usual and ordinary flow

of water occasioned by rainfall, or otherwise, and it has been expressly held that infrequent and extraordinary occurrences, which cannot be foreseen and provided against, create no obligation upon the municipality. This seems to be the principle established by our own authorities, as well as in other states. *Philadelphia, W. & B. R. Co. v. Davis,* 68 Md. 281, 11 A. 822; *Sentman v. Balto. & O. R. Co.,* 78 Md. 222, 27 A. 1074. In the case of *Kurrle v. Baltimore,* 113 Md. 63, 77 A. 373, 377, this court held that under the evidence the case should have gone to the jury because the evidence was sufficient that the city constructed a sewer of insufficient size to carry off ordinary rainfall, and made this statement, which is in line with all the cases above cited: "There is no evidence of the overflows spoken of being the result of such extraordinary rains as to bring them within well-established rules which relieve the municipal corporation from liability." See also *Seay v. City of Louisville,* 1935, 259 Ky. 64, 82 S. W. 2nd 212, 214. The court in dismissing the action in this case stated that, "The rule that a city is not liable for overflows caused by extraordinary and unusual rainfalls is well-settled in this and other jurisdictions. It is responsible only in case of usual and ordinary rainfalls." Again in *Oklahoma City v. Evans,* 1934, 173 Okl. 586, 50 P. 2nd. 234, 237, the court well stated the rule to be: "It is well settled that surface water is a common enemy and every proprietor must fight for himself as long as it takes its natural course. * * * If, however, a municipality does construct sewers and drains sufficient to meet all demands upon them under ordinary conditions, it is not liable because they may prove inadequate to carry off surplus waters from an extraordinary storm or flood."

The same principle is enunciated in *Deschner v. City of Ispwich,* 1932, 59 S. D. 456, 240 N. W. 487; *Adams v. Omaha,* 119 Neb. 753, 230 N. W. 680; *Sisters of St. Joseph Corp. v. Atlas Sand, Gravel & Stone Co.,* 1935, 120 Conn. 168, 180 A. 303; *Diklich v. City of Johnstown,* 118 Pa. Super, 283, 180 A. 41. In this case the action

was in trespass for damages, and the court stated, citing *Aron v. Philadelphia*, 310 Pa. 84, 164 A. 777, 779: "We are convinced that the sole cause of plaintiff's loss in this case was the excessive rainfall, which was shown to be of unusual severity on each of the four dates in question, and beyond the limit for which the sewer was designed. The real complaint of the plaintiff is that the city failed to provide sewers of sufficient capacity to carry off at all times and under all circumstances, water accumulating on Belfield Avenue which, because of the unusual topography of the vicinity, eventually flowed upon plaintiff's property. 'This is not an obligation, however, which the city assumes or is bound to discharge.' * * * We are convinced that the evidence in this case shows conclusively that the injury suffered by plaintiff was in no degree attributable to the negligence of the municipality, but resulted from the unfortunate position of plaintiff's property in the basin of an extensive drainage area, and that the floods in question were caused by the inability of the sewers to carry off an unusual volume of surface water which accumulated on the streets during the violent storms which descended upon the region on these occasions."

It seems to us, therefore, that the municipality's responsibility to guard against injury by ordinary and usual rainfalls is established, and it is equally established that the municipality is not compelled to anticipate results of cloud bursts and extraordinary and unusual fall of water, as testified to by Mr. Eisenstein, and others, in this case. Assuming that there was an increase in the flow of surface water caused by the paving of streets and construction of curbing for sidewalks, but that there has been no intentional diversion or change in the drainage area, as is contended for by the appellants, although the weight of the testimony does not seem to support that contention, this court has, in a number of cases, considered the respective rights and liabilities of the parties concerned under such circumstances. *Cumberland v. Willison*, 50 Md. 138; *Hitchens v. Frostburg*, 68 Md.

100, 11 A. 826; *Guest v. Commissioners of Church Hill,* 90 Md. 689, 45 A. 882. The principle governing such a situation is well stated in *Cumberland v. Willison, supra,* 50 Md. at page 150, where this court said: "But as respects surface water, if the damage has resulted solely as a consequence of the proper execution of a legal power by the corporation, it falls within the general principle and there is no liability therefor, and hence it has been held that as the owner of property may take such measures as he deems expedient to keep surface water off from him or turn it away from his premises onto the street, so municipal authorities may exercise their powers in respect to the graduation, improvement and repair of streets without being liable for the consequential damage caused by surface water to adjacent property." See *Urban Land Co. v. City of Shreveport,* 182 La. 978, 162 So. 747; *Pevear v. City of Lynn,* 249 Mass. 486, 144 N. E. 379.

The principle is well stated in *Sisters of St. Joseph Corp. v. Atlas Sand Gravel & Stone Co., supra*: "A municipality commits no wrong through the increased quantity and discharge of surface water which is the result of the grading of streets, the erection of buildings, or the paving of streets or the making of other proper public improvements which lessens the absorption of such waters by the soil, so long as the area of drainage is not added to. * * * Also the flow of surface water may be hastened and incidentally increased by gutters or drains leading directly into a watercourse into which it would ultimately find its way, so long as it is not diverted from its natural course and the stream which is its natural outlet, is not filled beyond its normal capacity."

It cannot be contended in this case that the area of drainage has been increased as to size, nor the normal and natural flow of the water been improperly diverted to any substantial degree. On the contrary, it is shown that the water and sewerage flowing toward the low point in front of the theatre has been materially reduced,

230

and that the twenty-four-inch outlet pipe, together with other outlets, were amply sufficient for normal, usual, and customary rainfall, and that the flood condition occurred only at times of cloud bursts, extraordinary or unusual rainfall. We are, therefore, of the opinion that the chancellor, in denying the relief prayer and in the dismissal of the bill of complaint, did not commit error, and the decree of the lower court should be affirmed.

*Decree affirmed, with costs.*