LAIRD, ROCK & SMALL, INC *v.* HARRY T. CAMPBELL & SONS

[No. 25, October Term, 1952.]

*Decided November 11, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*J. Elmer Weishiet, Jr.,* with whom was *Carlyle Barton, Jr.,* on the brief, for the appellant.

Submitted on brief by *John Grason Turnbull* and *W. Lee Harrison* for the appellee.

MARKELL, C. J., delivered the opinion of the Court.

This is an appeal from a judgment for defendant in an action for damages to plaintiff's house, while in the course of construction, alleged to have been caused or contributed to by defendant's negligence in cutting and grading a road beside plaintiff's property, whereby plaintiff's land was flooded, and the west wall of the house collapsed, during a heavy rainstorm on the night of August 30-31, 1950. The case was tried before Judge Gontrum without a jury.

Plaintiff's house was (and is) at the southeast corner of St. Francis Road and Meredith's Ford Road in Hampton Village, near Towson. By contract with Hampton Village, Inc., the "developer", defendant contracted to cut and grade Meredith's Ford Road, a new road running south from St. Francis Road, an existing paved road which runs east and west. At the intersection of the

two roads St. Francis Road has a grade of about seven per cent to the east, Meredith's Ford Road a grade of about five per cent to the north. The southeast corner of the intersection, or more strictly, a point about 200 feet south of the intersection, is the low point of an area of about six acres. At the time of the rainstorm defendant had removed the topsoil from Meredith's Ford Road up the hill south from St. Francis Road. The topsoil, of what had formerly been an open field, measurably absorbed rainfall and diminished the flow off as compared with the hard subsoil exposed by removal of the topsoil. This hard subsoil, during the rainstorm, increased the quantity and velocity of water that flowed off against the southwest corner of plaintiff's house. Along the south side of St. Francis Road, before defendant began work, ran a bank one foot high, along the north side of which ran a gutter which carried down St. Francis Road and north of plaintiff's property the flow of water down St. Francis Road—or down the south side of the crest of the road. In grading the intersection of the two roads defendant had cut the bank at the intersection, leaving the intersection level, without gutter or bank, thus opening a space as wide as Meredith's Ford Road, through which the water that had flowed down St. Francis Road flowed southeast to the lowest point in the area and against the northwest corner of plaintiff's house. Plaintiff contends that defendant was negligent (1) in removing the topsoil from Meredith's Ford Road without providing any storm water drainage, permanent or temporary and (2) in cutting the bank—and gutter—along St. Francis Road, at least without providing any substitute therefor.

Judge Gontrum heard all the witnesses and viewed the *locus*. In so far as the judgment depends upon credibility of the witnesses, the case is preeminently one in which we ought not to set it aside on the evidence unless it was clearly erroneous. Plaintiff contends that the judgment should be reversed, not on any question

of credibility or on any pure question of fact but because the court applied the wrong rules of law to essentially undisputed facts. We find in the testimony no issue of credibility, no conflict of facts and indeed no real conflict of opinions. The engineers for both parties agreed that (1) the removal of topsoil from Meredith's Ford Road and (2) the cutting of the bank along St. Francis Road increased the amount of water thrown against plaintiff's house. Counsel refrained from asking, and the engineers from answering, the question whether the wall would have collapsed in the absence of these two alleged instances of negligence.

Defendant contends (1) that it was not guilty of any negligence, (2) that plaintiff was guilty of negligence and (3) that plaintiff's damages were not caused by any negligence of defendant. Judge Gontrum rejected the first contention, ignored the second, and sustained the third.

Defendant says that the damage was due to the unusual and unexpected severity of the rain, that neither plaintiff nor defendant saw any need for special precaustions, and that if any such need existed, it was plaintiff's duty, at least as much as defendant's, to take precautions. It is suggested that plaintiff might have done what it did do in rebuilding the wall, leave a block out of the wall for water to pass through. Plaintiff's superintendent testified that they "don't usually do that; it is very unusual for anything like that." A "member" of plaintiff's "firm" testified that a block can only be left out until you are ready to backfill. Before the rain the backfill had been completed. We are not impressed by the defense of contributory negligence. We see no duty on the part of an adjoining property owner to make his wall as strong as a dam to resist, or as open as a sieve to permit, passage of water. If flooding is caused by a contractor's negligence in grading a road, it is not the abutting owner's duty to anticipate, and take precautions against, such negligence.

Defendant relies on *Eisenstein v. Annapolis*, 177 Md. 222, 9 A. 2d 224, in which it was held that a municipality, which by constructing storm water drains has not diverted water from its usual flow or increased the area to be drained, is not liable for flooding of abutting property by infrequent and extraordinary rainfall. That decision was carefully limited to a case in which no negligence was alleged or proved.

Judge Gontrum in the course of his opinion said, "Before the heavy rainstorm the road surface of the proposed Meredith's Ford Road, composed of grasses and weeds, was removed by the contractors leaving exposed the hard sub-soil of impervious dirt and clay forming, the plaintiff contends, a channel for the water from the crest of Meredith's Ford Road to its intersection with St. Francis Road.

"Prior to the construction work done by the defendant there was a low bank along the southern side of St. Francis Road at its intersection with Meredith's Ford Road. Between the paved surface of the road and the bank there was a ditch or gulley that could carry off past the plaintiff's property surface water from St. Francis Road draining toward its southern side. This bank was removed by the defendant and the ditch was filled to make the intersection of Meredith's Ford Road and St. Francis Road flush or on a level.

"It is impossible to ascertain with any degree of accuracy how much water formerly collected on this particular lot under conditions existing prior to the grading operations of the defendant corporation. However, it is clear from an examination of the terrain and the maps which have been introduced in evidence that the lot in question is at what might be called the spout of the funnel for an area estimated at about six acres.

"It is true as the plaintiff contends that the removal of the humus from that portion of the land graded for Meredith's Ford Road did possibly accelerate the flow of water from that particular section. Also, it is true that by the removal of the bank between St. Francis

Road and Meredith's Ford Road, which was being constructed, water from a part of St. Francis Road was diverted to this particular piece of property. However, the water from St. Francis Road and the rainfall on Meredith's Ford Road would constitute only a small percentage of the total volume of water converging upon this lot.

"The Court believes that the defendant in this case was guilty of negligence in removing the bank in question without first arranging for the diversion of the water coming down St. Francis Road. The Court has been inclined to the view that the defendant should be held for damages to the plaintiff's property. However, I have found it impossible to decide that the negligence of the defendant caused the damage in question.

"A huge volume of water must have come down the swale referred to by Mr. Dollenberg which is shown on the plats and is apparent to the eye. Whether or not the additional water from St. Francis Road and the accelerated flow from Meredith's Ford Road contributed materially to the damage it is impossible to determine as a great amount of water, in any event, would have collected on this particular spot after a heavy rain. It is a natural collecting point for the whole six acres."

We think the facts found by Judge Gontrum lead to a different result. In terms he found defendant negligent in cutting the bank along St. Francis Road. In effect he found negligence on both scores charged by plaintiff. That cutting the bank permitted a large quantity of water to escape and overflow on plaintiff's land is as obvious as it is that building a wall has the opposite effect. *Hancock v. Stull*, 199 Md. 434, 86 A. 2d 734. Removing the topsoil from Meredith's Ford Road must have had much the same effect. For increasing drainage on a neighbor's property by paving one's own property, the owner has been held liable. *Jutte v. Hughes*, 67 N. Y. 267, 272. Whether additional water due to defendant's negligence contributed "materially" to the damage is not a question of percentage. In both re-

spects the effect of defendant's negligence continued as long as the storm—and afterwards. The reasonable inference is that every drop in the cup contributed to the cup overflowing.

In *Baltimore & Potomac Railroad Co. v. Reaney,* 42 Md. 117, 136-137, the court, by Judge Alvey, said, "It is certainly true, that where two or more *independent* causes concur in producing an effect, and it cannot be determined which was the efficient and controlling cause, or whether, without the concurrence of both, the event would have happened at all, and a particular party is responsible for only the consequences of one of such causes, in such case, a recovery cannot be had, because it cannot be judicially determined that the damage would have been done without such concurrence. *Marble v. Worcester,* 4 Gray, 395. But it is equally true, that no wrong-doer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense, that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act. To entitle such party to exemption, he must show not only that the same loss *might* have happened, but that it *must* have happened if the act complained of had not been done. *Davis v. Garrett,* 6 Bing. 716." See also *Consolidated Gas Co. v. Getty,* 96 Md. 683, 690, 54 A. 2d 660; *Mullan v. Hacker,* 187 Md. 261, 269-270, 49 A. 2d 640; *Garbis v. Apatoff,* 192 Md. 12, 16-17, 63 A. 2d 307; *Neubauer v. Overlea Realty Co.,* 142 Md. 87, 95-99, 120 A. 69.

Judge Gontrum in his opinion says, "the loss sustained by the plaintiff is admitted to be $2,332.23." This statement was not disputed in the briefs or at the oral argument. Neither party has printed the evidence on the amount of damages.

> *Judgment reversed, with costs, and judg-*
> *ment entered for plaintiff for*
> *$2,332.23.*