Loyce A. MORAIN, Louise I. Brown, Chris L. Brown, J. Macard Associates, an Oklahoma general partnership, J.V. Simmering, M.D. and Mary Lou Simmering, Appellees/Counter–Appellants

v.

The CITY OF NORMAN, a Municipal Corporation, Appellant/Counter–Appellee.

No. 73242.

Supreme Court of Oklahoma.

Nov. 16, 1993.

David A. Poarch, Luttrell, Pendarvis, Rawlinson & Poarch, Norman, for appellees/counter-appellants.

Jeff H. Bryant, Asst. City Atty., Jeff H. Raley, City Atty., Norman, for appellant/counter-appellee.

SIMMS, Justice.

These appeals involve a judgment entered in favor of appellees/counter-appellants, Loyce A. Morain, Louise I. Brown, Chris L. Brown, J. Macard Associates, J.V. Simmering and Mary Lou Simmering (property owners/plaintiffs), in their action against the City of Norman (City), appellant/counter-appellee, for damages due to flooding which occurred in plaintiffs' respective properties. The cause was tried without a jury, and the district court determined that City was liable to the property owners on one of their two theories of liability. City appealed from the judgment, and the property owners counter-appealed. We granted Oklahoma Municipal League, Inc.'s request for leave to file an amicus curiae brief in this matter. The Court of Appeals affirmed in part and reversed in part the judgment of the district court. The property owners and City each filed a Petition for Certiorari asserting various errors in the opinion of the Court of Appeals Certiorari was granted to. address the issues raised. We now vacate the opinion of the Court of Appeals and affirm in part and reverse in part the judgment of the district court.

We have reviewed the record and hold the findings of fact determined by the trial court are supported by competent evidence, and we will utilize those findings in our recitation of the facts.

The plaintiffs own real property in Norman, Oklahoma, in an area southwest of the intersection of Lindsey Street which

runs east and west and McGee Avenue which runs north and south. This area has a history of flooding when heavy rains occur in Norman. An open, paved drainage ditch lies between the relevant properties which consist of apartment houses and office buildings. This drainage ditch is part of the overall surface water drainage system maintained by City.

In August, 1981, City enacted Ordinance 0–8182–1 to establish policies, standards and responsibilities for the improvement, operation and maintenance of drainage channels and structures then or thereafter established within the City of Norman. One of the minimum requirements of the ordinance is that drainage channels such as the one between the above mentioned properties be able to carry a 50 year return frequency rainfall event; this means that the channel should be able to handle a rain storm that produces a volume of water normally seen only once every 50 years. The drainage channel is inadequate to protect the plaintiffs and their property against flooding under the minimum requirements of the ordinance. In fact, their property has flooded on at least four occasions since February, 1985, and is at risk of being flooded again. As a result, the value of the properties has diminished. Expert witnesses for the parties agreed that the flooding is caused in large part by the backing up or ponding of water in the drainage channel due to the drainage pipe which the channel flows into being too small to handle all of the water in the McGee/Lindsey area even on a normal rainfall.

In October, 1984, City approved a plan for on-site and off-site drainage improvements for the Victorian Place residential development, a residential subdivision located approximately one-half mile north of the intersection of Lindsey and McGee. Approval of the plans was the only relevant action taken by City in the development of Victorian Place. Although all of the experts testified the drainage improvements increased water flow in the area where plaintiff's property is located, City's experts stated that such increase was not significant. The trial court agreed with plaintiff's expert that such increase in water flow had a significant impact on the pre-existing problem of rainfall surface water drainage in the McGee/Lindsey area and caused increased flooding. Yet the court noted that the flooding of plaintiffs' properties was due in part to excessive or intense rainfalls on the relevant dates. The court further held that such increased flooding and its likely recurrence interfered with plaintiffs' use and enjoyment of their property and diminished the value thereof.

Based upon these findings, the trial court concluded that City was liable to the property owners on the grounds that City's actions created a public nuisance. Thus, the trial court awarded over $100,000.00 to plaintiffs on the nuisance action and ordered City to abate the nuisance by diverting water added to the Lindsey/McGee system by the Victorian Place addition away from the area south of Lindsey Street. The trial court further ruled that plaintiffs were not entitled to damages in the second cause of action, inverse condemnation, because there had been no "taking" of plaintiffs' property.

We first address the inverse condemnation action. Plaintiffs alleged their property was "taken" by City without just compensation in violation of Okla. Const. Art. 2, § 24 which provides:

"Private property shall not be taken or damaged for public use without just compensation."

In *Mattoon v. City of Norman,* 617 P.2d 1347 (Okla.1980), this Court was faced with a situation bearing similarities to the one before us now. Mattoon brought a class action lawsuit against the City of Norman on the grounds that an ordinance enacted by the governing body of Norman resulted in a taking of the property of Mattoon and others similarly situated. The ordinance prohibited the use of land along a designated flood plain except for certain limited uses. Owning land abutting a drainage channel, Mattoon asserted the City of Norman took his land without just compensation by prohibiting all but the designated uses. The trial court sustained the city's

demurrer on the grounds that the ordinance was a valid exercise of police power not constituting a "taking" of private land.

We reversed the trial court's decision and remanded with directions to reinstate the petition because whether a "taking" occurred was, in that case, a question for the trier of facts. We stated:

> "We have held that acts done in the proper exercise of the police power which merely impair the use of the property do not constitute a "taking" ... The test is not the propriety of the exercise, but is a question of impairment, a fact question that cannot be decided on a demurrer.
>
> In Oklahoma, we have held that the test of whether there can be recovery in inverse condemnation is whether there is a *sufficient interference with the landowner's use and enjoyment to constitute a taking. The question of substantial interference is one that the trier of facts must decide* ...
>
> If there is an overt act by the governmental agency resulting in an *assertion of dominion and control over property*, there can be an actual or de facto "taking"... 617 P.2d at 1349 (Citations omitted) (Emphasis added).

*See also, April v. City of Broken Arrow,* 775 P.2d 1347 (Okla.1989) (quoting *Mattoon* ).

Moreover, in *State ex rel. Dep't of Transp. v. Hoebel,* 594 P.2d 1213, 1215 (Okla.1979), we held that where flooding is "severe enough so as to effectively destroy or impair the land's usefulness," such flooding may constitute a "taking" under § 24. *See also, Garvin Soil Conservation District,* 381 P.2d 148 (Okla.1963) (where the impounding of water on an owner's land is merely incidental to, and not a necessary part of, the public purpose use, scheme, or plan of a city in making public improvements, inverse condemnation will not lie), and *City of Blackwell v. Murduck,* 206 Okl. 466, 244 P.2d 817 (1952) (action for inverse condemnation is not available to a landowner "where no part of the owner's land is taken and occupied for public use").

The trial court found that City had committed no overt act exercising dominion or control over plaintiffs' property and that use of plaintiffs' property was not a necessary part of any public improvement made by City. Hence, no "taking" of plaintiffs' property occurred. *State ex rel. Department of Highways v. Cook,* 542 P.2d 1405 (Okla.1975). The trial court further determined that the flooding of plaintiffs' land was "not so substantial of an interference so as to effectively destroy or impair the land's usefulness." Such a finding is supported by the record. Thus, the trial court's ruling dismissing plaintiffs' inverse condemnation action is affirmed. *Hoebel, supra.* Plaintiffs' only resort is to a common law action. *Murduck, supra.*

Plaintiffs' alternative theory of recovery was public nuisance. At trial, plaintiffs attempted to show they were entitled to damages as a result of the flooding that occurred prior to the Victorian Place addition as well as the increased flooding caused by such addition. Hence, we first must determine whether City was liable for a nuisance prior to the addition of Victorian Place, and then assess whether City's role in the development of Victorian Place and the resulting increased flooding constituted a nuisance. We hold City is not liable for nuisance because it did not commit any acts or neglect any duties which created or permitted a nuisance either prior to or after the development of Victorian Place.

All the parties agree that nuisance actions are governed by 50 O.S.1981, § 1 which provides, in pertinent part:

> "A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
>
> First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or
>
> \* \* \* \* \* \*
>
> Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities."

In *Briscoe v. Harper Oil Co.*, 702 P.2d 33 (Okla.1985), we noted that a nuisance was "an unreasonable, unwarranted, or unlawful use by a person or entity of property lawfully possessed, but which works an obstruction or injury to the right of another." 702 P.2d at 36. In addition, we have held that a municipality creating or permitting such a nuisance, either by nonfeasance or misfeasance, is liable to persons injured by that nuisance regardless of the fact that the municipality was exercising a governmental function. *City of Weatherford v. Luton*, 189 Okl. 438, 117 P.2d 765 (1941) and *Oklahoma City v. Tytenicz*, 171 Okl. 519, 43 P.2d 747 (1935). Thus, in order to find City liable for nuisance, the flooding to the plaintiffs' properties must have been caused by City using lawfully possessed property in an unreasonable, unwarranted or unlawful manner (misfeasance) or failing to perform some duty (nonfeasance).

We first note that no evidence was presented to show that City constructed any of the drainage channels of which the plaintiffs complain. Moreover, there is no indication that City possessed, entered onto, or used any of the properties. Having neither possessed nor used plaintiffs' properties, City cannot be charged with nuisance on the grounds of some unreasonable or unwarranted use of the properties. The question then is whether City failed to perform a duty in regards to the properties.

City admits that it was responsible for maintaining the existing drainage channels. Plaintiffs assert that although the ditch may have been adequate at the time it was built, over the years, the Lindsey/McGee area has been built up to the point where the drainage system can no longer adequately drain all of the surface water from

storms. They argue City's duty to maintain the drainage system encompassed improving it so that it could handle the increased surface water drainage and keep that drainage from flooding their property.

The Lindsey/McGee drainage system is inadequate to drain all of the areas it services. Evidence indicated it was inadequate before Victorian Place was added. The crux of plaintiffs' argument is that City has permitted a nuisance by failing to make improvements to the inadequate drainage system.

 However, in Oklahoma, a municipality is under no duty to make public improvements, including drainage for surface waters, and any decision to construct or not to construct such improvements is discretionary. *Robinson v. City of Bartlesville Board of Education*, 700 P.2d 1013 (Okla.1985); *Oklahoma City v. Evans*, 173 Okl. 586, 50 P.2d 234 (1935). *See generally*, 63 C.J.S. *Municipal Corporations*, § 874 (1950) (citing *Evans, supra*). Once the decision to construct surface water drainage improvements is made, the municipality may be liable for creating a nuisance if the municipality inadequately or improperly constructs the drainage channels. *Robinson, supra; City of Ada v. Canoy*, 198 Okl. 206, 177 P.2d 89 (1947). Nevertheless, it is within the municipality's discretion as to whether such improvements should be made.

 Under 51 O.S.Supp.1988, § 155(5),[1] a political subdivision is not liable for a loss or claim which results from the failure to perform some act or service which is in the discretion of the municipality or its employees. Because City is a political subdivision

---

1. Title 51 O.S.Supp.1988, § 155 provides, in pertinent part:
 "The state or a political subdivision shall not be liable if a loss or claim results from:
 \* \* \* \* \* \*
 5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees:
 \* \* \* \* \* \*

12. Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority: ..."

covered by the Governmental Tort Claims Act, this exemption applies to City.[2] Hence, City is not liable for its failure to make improvements to the then-existing drainage system as this is a discretionary decision, specifically exempted from liability under the Oklahoma Governmental Tort Claims Act. *Robinson, supra.*

In addition, because City was under no duty to make improvements in the system, it cannot be liable for failing to make those improvements under the rule of law set down in *Luton, supra,* and *Tytenicz, supra.* Plaintiffs' solution to the problem of flooding in the Lindsey/McGee area "properly lies in concerted political action rather than in the courts." *Baldwin v. City of Overland Park*, 205 Kan. 1, 468 P.2d 168 (1970).

■ Furthermore, City cannot be held liable for creating or permitting a nuisance due to any increased flooding which resulted from the construction of the drainage flume carrying surface water from Victorian Place. City had no involvement in the construction of the new drainage flume other than approving the plans to build it. Plaintiffs assert such approval by City made it liable for the resulting nuisance, and the trial court apparently agreed. However, in Oklahoma, a municipality cannot be held liable for losses or claims that result from the exercise of licensing powers including the issuance of a certificate or approval. 51 O.S.Supp.1988, § 155(12), *supra,* fn. 1. By approving the plan of the private developers and issuing a certificate, City was exercising those powers enumerated in § 155(12). Therefore, City was shielded from liability for any losses or claims resulting from the exercise of that power, in this case, the increased flooding, *Stewart v. Rood*, 796 P.2d 321 (Okla.1990), and cannot be held liable for the "exacerbated and enhanced" flooding which was caused by the construction of the drainage flume.

Consequently, the judgment of the trial court awarding damages to plaintiffs on their nuisance action must be reversed. Because City is not responsible for the increased flooding in the area surrounding plaintiffs' properties, that portion of the judgment directing City to abate the increased flooding must also be reversed.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, the judgment of the district court is AFFIRMED IN PART AND REVERSED IN PART, and this matter is REMANDED with directions to enter judgment for the City of Norman on all causes of action. Additionally, the trial court's order awarding costs and attorney fees to plaintiffs is REVERSED, and plaintiffs' request for appeal-related attorney fees and costs is DENIED.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA and KAUGER, JJ., concur in part, dissent in part.

ALMA WILSON, J., not participating.

**2.** Pursuant to 51 O.S.Supp.1987, § 152(8)(a), the definition of "political subdivision" includes "a municipality." Section 152 further provides:

"7. 'Municipality' means any incorporated city or town, and all institutions, agencies or instrumentalities of a municipality."

There is no question that City is a municipality under this definition, and as such, is a political subdivision covered by the Governmental Tort Claims Act.